IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Action No. 1:07-CV-01649-CKK

ARISTA RECORDS, LLC, *et al*,          )
                                       )
                Plaintiffs,            )
                                       )
        vs.                            )     **STATEMENT OF POINTS AND**
                                       )     **AUTHORITIES BY DEFENDANT DOE**
DOES 1 – 19,                           )     **#3 IN SUPPORT OF MOTION TO**
                                       )     **RECONSIDER, SEVER, AND STAY**
                Defendants.            )     **SUBPOENA**

_____

NOW COMES Defendant, Doe #3, by and through counsel, and respectfully moves the Court to alter or amend its opinions and orders [Docket #25 through 28], pursuant to Fed. R. Civ. P., Rule 59(a), and to grant Doe #3 relief from its order pursuant to Fed. R. Civ. P., Rule 60(b).  Defendant asks that the Court reconsider that portion of its decision requiring George Washington University ("GW") to comply with the subpoena *before* allowing severance because both Plaintiffs and Defendants are improperly joined.

Further, the Defendant asks the Court to stay the execution of the subpoena pending reconsideration.  In support thereof, the Defendant shows unto the Court as follows:

**INTRODUCTION**

The Plaintiffs allege copyright infringement.  The anonymous defendants moved to Vacate the Court's Order dated October 11, 2007, to Quash the Subpoena, and to Dismiss Plaintiff's Complaint [docket #8].  The Court has granted in part and denied in part  [docket #25].  To the extent that the Court granted the Motion, it does so more as a matter of form than substance.  The Plaintiffs concede that the justification for granting

the October 11, 2007 Order was incorrect, so the Court rightfully eliminates that rationale

and the expedited discovery Order has been reissued [docket #27]. The new ground for

granting the expedited discovery order is that the Plaintiff's third-party subpoena to GW

may issue pursuant to Fed. R. Civ. P., Rule 45. The Court concludes its Memorandum

Opinion with a discussion of Defendant's arguments concerning joinder [docket #26].

The Defendant, by the Court's Opinion, is permitted to reargue concerning misjoinder,

but only *after* GW complies with the subpoena. This sequence is unfairly prejudicial to

the Defendant, and the Defendant respectfully asks the Court to reconsider the argument

of its misjoinder claim presented herein.

## ARGUMENT

### *Neither Plaintiffs nor Defendants are Properly Joined*

The Court holds that "… after the actual facts and circumstances are known,

severance may be appropriate" [docket #26, Mem. Op. *17]. Defendant respectfully

submits that is simply not the case. Both Plaintiffs and Defendants are joined without any

good faith evidentiary support for why they should be allowed to be joined under Federal

Rule of Civil Procedure 20. To join plaintiffs is only proper if: "they assert any right to

relief jointly, severally, or in the alternative with respect or arising out of the same

transaction, occurrence, or series of transactions or occurrences…and any question of law

or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a). Similarly, a

plaintiff can join multiple defendants in one action if "any right to relief is asserted

against them jointly, severally, or in the alternative with respect to or arising out of the

same transaction, occurrence, or series of transaction or occurrences . . . and any question

of law or fact common to all defendants will arise in the action." *Id*.

The allegation that the 19 Doe Defendants used a network called "Gnutella" to somehow infringe Plaintiffs' copyrights does not meet these requirements. Mere allegations of similar acts violating the same law do not create the common nexus of facts required to meet the transaction test set forth in Rule 20.

The case cited by the Court for the proposition that severance may be appropriate at a later date, orders that the defendants be severed at exactly this stage of the proceedings.[1] Severance for misjoinder in this case is appropriate immediately. Just as in *Fonovisa*, the Complaint does not set forth any specific factual allegations that Defendants acted in concert in conducting the offending actions or that the infringing actions themselves are related in any way. Plaintiffs have improperly joined Defendants, not because they sincerely believe that all of the claims arise from the same series of transactions or occurrences, but because their litigation scheme involves a calculated effort to limit their filing fees and make their discovery work (consisting entirely of subpoenaing George Washington University to gain access to Defendants' personal information) more manageable for them. Perhaps the Court should tolerate the litigation scheme, if there was some basis in law for the joinder, but there is not.

Not only are Defendants improperly joined, but Plaintiffs assert no allegations to explain why they, a group of ten recording companies incorporated and doing business in various different states, meet the "same transaction [or] occurrence" test. In fact, the only reason Plaintiffs are joined is because at least one of the 19 Defendants have allegedly infringed at least one copyright allegedly owned by each Plaintiff. As an example,

---

[1] *Fonovisa, Inc. v. Does 1-9*, No. 07-1515, (W.D. Pa. Apr. 3, 2008) at *10, Exhibit A of Appendix, ("the complaint does not contain any allegation that the nine Defendants are jointly or severally liable to the sixteen Plaintiffs …" and "Plaintiffs have failed to allege any facts tending to show that one or more of the Defendants has actually downloaded songs from another Defendant which could conceivably link the Defendants or show they acted in concert.").

Plaintiffs allege that Doe #1 possesses 452 audio files, and provides a list of ten specific files that were allegedly downloaded and/or distributed illegally. (Compl. Exhibit A). Plaintiffs identify the copyright owners of those seven files as UMG and BMG (under Sony and separately). *Id.* The Complaint makes no specific allegations as to how Doe #1 infringed the copyrights of the other seven Plaintiffs. The fact that Plaintiffs are all owners of copyrighted sound recordings is insufficient for permissive joinder.

This flagrant disregard of the joinder rules has been the common practice of Plaintiffs. Rulings from several district courts, in addition to the *Fonovisa* court, have dismissed the claims against all but one of the "Does" establishing an impressive trend that Defendant urges the Court to follow.[2]

---

[2] *Arista Records v. Does 1-9*, No. 2:07-CV-961-JLG-MRA (S.D. Oh. Apr. 18, 2008) Exhibit B of Appendix, (Magistrate Judge held that the mere use by the defendants of the same internet service provider (the university) did not give rise to any basis for joinder under Fed. R. Civ. P. 20, dismissed as to all John Does except John Doe #1, and ordered the RIAA to file separate new cases against each of the dismissed John Does within 20 days); *LaFace Records, LLC v. Does 1 - 38,* No. 5:07-CV-298-BR, 2008 U.S. Dist. LEXIS 14544, * 7-8 (E.D.N.C. Feb. 27, 2008) Exhibit C of Appendix (ordering all Doe defendants severed except Doe #2, because Doe #1 was represented and Defendant Doe #1 asked that he be severed from the principal case); *Arista Records, LLC v. Does 1 - 27,* No. 07-162-B-W, 2008, WL 222283, (D. Me. Jan. 25, 2008) Exhibit D of Appendix (Magistrate Judge recommends severance); *BMG Music v. Does 1 - 4,* No. 3:06-cv-01579-MHP, 2006, U.S. Dist. LEXIS 53237, * 5-6, (N.D.Cal. July 31, 2006) Exhibit E of Appendix, (all but Doe #1 severed); *Elektra Entm't,* 2004 WL 2095581, at * 6-7; *Bridgeport Music, Inc. v. 11C Music,* 202 F.R.D. 229, 231 (M.D. Tenn. 2001); *BMG Music v. Does 1-203*, 04-CV-650, 2004 WL 953888 (E.D. Pa. April 2, 2004) Exhibit F of Appendix ("in light of the Court's continuing conviction that joinder is improper, deferring consideration of the joinder issue is inappropriate despite the fact that it would reduce costs for Plaintiffs and mitigate the risk of disparate treatment at the hands of the learned Judges of this District (a risk, the Court notes, that is present in every case that involves developing areas of law)); *Interscope Records v. Does 1-25*, 06:04-cv-197-Orl-22DAB, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. April 1, 2004) Exhibit G of Appendix, ("same transaction requirement requires joint action or liability on the part of the Defendants and is not satisfied by the fact that the Defendants accessed the songs through [the same] peer-to-peer network, or the fact that Defendant [sic] are 25 of the 2.1 million subscribers who access the Internet through [the same ISP]."); and *Sony BMG Music Entm't v. Does 1-5*, No. 2:07-cv-02434 (C.D. Cal. Aug. 2, 2007) Exhibit H of Appendix (dismissing all but first defendant and ordering plaintiffs to show cause why certain plaintiffs should not be dismissed as improperly joined).

Despite unambiguous directives from the federal courts, Plaintiffs continue to disregard the rules of joinder. Earlier this year, one District Court Magistrate Judge was so troubled by the Plaintiffs' transparent litigation strategy as to characterize the joinder portion of the complaint as "flouting [the Rule 11(b)(3) evidentiary support] requirement in order to make their discovery efforts more convenient or to avoid paying the proper filing fees." The Court suggested *sua sponte* severing, and ordering "show cause" concerning Rule 11(b) for Plaintiffs' "gamesmanship."[3]

Doe #3 also respectfully requests that Doe #3 be one of the Does severed from the principal action. Courts in the cases cited at footnote 2 above, have commonly severed all but Doe #1 from the action. In *Laface*, upon Defendant Doe #1's request, the Court severed Doe #1 and left the unrepresented Doe #2 in the principal action. Apparently, under the theory that no good deed goes unpunished, the moving Doe # 3 in *Fonovisa* did not get the benefit of his effort as the court severed Does 1, 2 and 4 through 9.

Doe #3 further asks that the court issue an order staying compliance with the subpoena until this Motion is decided.

Respectfully submitted,

By: /s/ Larry Harbin
Larry Harbin
MCINTYRE, HARBIN & KING, LLP
Attorney for Defendant Doe #3
500 Ninth Street SE
Washington, DC 20003
Telephone: (202) 546-1100
Facsimile: (202) 543-9230
lharbin@mhk-law.com
*Local counsel*

---

[3] *Arista Records, LLC, et al v. Does 1-27*, 07-162-JAW, *11, *12 footnote 5 (D.Me., Jan. 25, 2008). (Magistrate's decision on motion to dismiss).

By: /s/ Stephen E. Robertson

Stephen E. Robertson

ROBERTSON, MEDLIN & BLOCKER, PLLC

Attorney for Defendant Doe #3

125 South Elm Street, Suite 100

Greensboro, NC  27401

Telephone: (336) 378-9881

Facsimile: (336) 378-9886

srobertson@robertsonmedlin.com

admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of May, 2008, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Matthew Jan Oppenheim
MATTHEW J OPPENHEIM, ESQ.
7304 River Falls Drive
Potomac, MD 20854
matt@oppenheimgroup.net

And I hereby certify that I will serve the document by e-mail to the following non-party:

Thomas B. Smith
Associate General Counsel - Litigation
The George Washington University
2100 Pennsylvania Avenue, NW
Washington, D.C.  20052
tbsmith@gwu.edu

By: /s/ Larry Harbin
Larry Harbin
MCINTYRE, HARBIN & KING, LLP
Attorney for Defendant Doe #3
500 Ninth Street SE
Washington, DC 20003
Telephone: (202) 546-1100
Facsimile: (202) 543-9230
lharbin@mhk-law.com

By:  /s/ Stephen E. Robertson
Stephen E. Robertson
ROBERTSON, MEDLIN & BLOCKER, PLLC
Attorney for Defendant Does #3
125 South Elm Street, Suite 100
Greensboro, NC  27401
Telephone: (336) 378-9881
Facsimile: (336) 378-9886
srobertson@robertsonmedlin.com

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FONOVISA, INC., *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 07-1515 |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| DOES 1 - 9, | ) | |
| | ) | Doc. No. 6 |
| Defendants. | ) | |
| | ) | |

**OPINION AND ORDER**

LENIHAN, M.J.

Currently pending before the Court is Defendant Doe #3's Motion to Vacate the Order Granting Expedited Discovery, Motion to Dismiss the Complaint, Motion to Quash the Subpoena, and Motion to Dismiss for Improper Joinder, which the Court has converted to a Motion for Severance (Doc. No. 6). For the reasons set forth below, the Court will grant Defendant Doe # 3's Motion for Severance, but will deny Defendant Doe #3's remaining motions.

**I.      FACTUAL BACKGROUND & PROCEDURAL HISTORY**

Plaintiffs are sixteen different business entities who claim copyright ownership or exclusive licensing rights under federal copyright law with respect to certain copyrighted sound recordings, some of which are listed in Exhibit A to their Complaint. (Compl. ¶ 23.) Plaintiffs claim valid copyright registration with respect to the sound recordings listed on Exhibit A (collectively the "copyrighted recordings"). (*Id.*) Plaintiffs instituted the present lawsuit alleging that the Doe Defendants have infringed on their exclusive rights under the Copyright Act, 17 U.S.C. § 101 *et seq.*, to reproduce and distribute the copyrighted recordings to the public. (Compl. ¶ 24.) In

particular, Plaintiffs contend that without their consent or authorization, each Defendant has continuously used and continues to use an online media distribution system to download and/or distribute to the public certain of the copyrighted recordings. (Compl. ¶ 25.)

Plaintiffs have identified each Defendant only by the Internet Protocol ("IP") address assigned to that Defendant by his or her Internet Service Provider ("ISP") on the date and time of that Defendant's alleged infringing activity. (Compl. ¶ 20.) In order to obtain the actual names and addresses of each Defendant, Plaintiffs filed an *Ex Parte* Application for Leave to Take Immediate Discovery (Doc. No. 3) ("*Ex Parte* Application"), and memorandum of law in support thereof (Doc. No. 4). In their *Ex Parte* Application, Plaintiffs requested leave to serve a Rule 45 subpoena on the Defendants' ISP,[1] requesting documents that identify each Defendant's true name, current (and permanent) addresses and telephone numbers, e-mail addresses, and Media Access Control ("MAC") addresses. Plaintiffs contended that this information is necessary to identify the Doe Defendants and allow them to pursue this lawsuit to protect their copyrights against repeated infringement.

In support of this request, Plaintiffs submitted that good cause exists for conducting this limited discovery in advance of a Rule 26(f) conference, where there are no known defendants with whom to confer. According to Plaintiffs, good cause exists here because the Complaint alleges claims of infringement; there is a very real danger the ISP will not preserve the information Plaintiffs seek long enough to be available through the normal discovery process; the discovery requests are narrowly tailored so as not to exceed the minimum information needed to advance this

---

1. Defendants' ISP has been identified as Carnegie Mellon University. (Pls.' Mem. of Law in Support of *Ex Parte* Application, at 2.)

lawsuit or to prejudice Defendants; and expedited discovery will substantially contribute to moving this case forward. In consideration of Plaintiffs' well-founded arguments, the Court entered an Order on December 19, 2007, granting Plaintiffs' *Ex Parte* Application (Doc. No. 5).

Subsequently, Plaintiffs served a Rule 45 subpoena on the ISP, who apparently notified each of the Doe Defendants of the subpoena and provided them with an opportunity to object prior to complying with the subpoena. (Pls.' *Ex Parte* Application, at 2 n. 1.) On February 14, 2008, Defendant Doe # 3 ("Doe # 3") filed an objection in the form of several motions, which includes a Motion to Vacate this Court's Order dated December 19, 2007 granting Plaintiffs' *Ex Parte* Application (Doc. No. 5), a Motion to Quash the Subpoena, a Motion to Dismiss the Complaint pursuant to Rule 12(b)(6), and a Motion to Dismiss the claims against Doe # 3 for improper joinder under Rule 20, all of which are set forth in one document (Doc. No. 6). In light of Doe # 3's motions, the Court entered an order on February 19, 2008, staying the responses to the discovery requests vis a vis Doe # 3 until the Court rules on the pending motions. The Court further ordered Plaintiffs to submit a response to the pending motions, which they did on March 5, 2008. Doe # 3 filed a reply on March 20, 2008 (Doc. No. 10).

The pending motions and Plaintiffs' opposition thereto have been fully briefed and these motions are now ripe for disposition.

## II.   ANALYSIS

### A.   Doe # 3's  Motion to Dismiss Pursuant to Rule 12(b)(6)

As a preliminary matter, the Court addresses Doe # 3's Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6), since  a decision in favor of Doe # 3 would in essence render the other motions moot. Doe # 3 submits that the only exclusive right that could possibly be implicated here

is the copyright owner's right to distribution, and Plaintiffs have failed to allege in their Complaint sufficient facts to show that Defendants have actually distributed copies of the copyrighted recordings for the purposes of direct or indirect commercial advantage. Doe # 3 cites a number of cases for the proposition that no infringement occurs of a copyright owner's exclusive distribution rights where the defendant merely offers to distribute or copies the copyrighted material, but does not consummate the sale.[2] Plaintiffs counter with citations to authority that hold under almost identical facts that such conduct constitutes "deemed distribution" and therefore infringes a copyright owner's exclusive right to distribute.[3] Determination of whether a "distribution" occurred, however, depends on the factual circumstances of the case. At this stage of the litigation, the Court finds that Plaintiffs have alleged sufficient facts regarding "distribution," which must be taken as true, to survive a Rule 12(b)(6) motion.

In deciding a motion to dismiss pursuant to Fed.R.Civ.P. Rule 12(b)(6), the Court must accept as true all allegations of the Complaint and all reasonable factual inferences must be viewed in the light most favorable to the Plaintiffs. *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985) (citations omitted). The Court, however, need not accept inferences drawn by Plaintiffs if they are unsupported by the facts as set forth in the Complaint. *See Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions

2. All of the cases cited by Doe # 3 are distinguishable on one of the following grounds: (1) the cited cases are not on point factually with the case at bar, (2) the decisions were made on summary judgment motions, or (3) plaintiffs in those cases failed to meet the notice and pleading standard in *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955 (2007).

3. *See, e.g., A & M Records, Inc. v. Napster,* 239 F.3d 1004 (9th Cir. 2001); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,* 545 U.S. 913 (2005).

-4-

set forth as factual allegations. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citing 5 C. Wright & A Miller, *Federal Practice & Procedure* § 1216, pp. 235-36 (3d ed. 2004)). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. Thus, a claim will be dismissed under Rule 12(b)(6) if it does not allege "enough facts to state a claim for relief that is plausible on its face." *Id.*

Recently, the Court of Appeals for the Third Circuit opined as to the impact of the *Twombly* decision on the pleading standard for purposes of a Rule 12(b)(6) motion:

> In light of *Twombly,* Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice, but also the "grounds" on which the claim rests.

*Phillips v. County of Allegheny,* 515 F.3d 224, 232 (3d Cir. 2008) (citing *Twombly*, 127 S.Ct. at 1965 n. 3).[4] Thus, the Court of Appeals concluded that after *Twombly,* it is no longer sufficient to merely allege the elements of a cause of action; rather, *Twombly* requires that the complaint "'allege facts suggestive of [the proscribed] conduct.'" *Id.* at 233 (citing *Twombly*, 127 S.Ct. at 1969 n. 8). In summary,

---

4. Rule 8 requires *inter alia* "a short and plain statement of the claim showing that the pleader is entitled to relief . . .." Fed.R.Civ.P. 8(a)(2). This statement must provide the defendant with fair notice of the plaintiff's claim and the grounds upon which it is predicated. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (citation omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Id.* at 512 (citations omitted).

> "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

*Id.* at 234 (quoting *Twombly,* 127 S.Ct. at 1965).

Viewed in light of the forgoing liberal pleading standards, this Court finds that at this early stage of the proceedings, Plaintiffs have alleged sufficient facts (taken as true) to suggest conduct that satisfies the required elements of a copyright infringement claim against the Doe Defendants. A plaintiff asserting a claim of copyright infringement need only prove two things: (1) that the plaintiff owns a valid copyright, and (2) that the defendant violated one or more of the exclusive rights set forth in 17 U.S.C. § 106. *Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); 17 U.S.C. § 501(a) & (b). Plaintiffs have alleged sufficient facts to support both of these elements. Plaintiffs assert that they own the copyrights of the sound recordings at issue and have obtained valid certificates of copyright registration for each of the copyrighted recordings. (Compl. ¶ 23.) Plaintiffs further allege that each of the Defendants has used an online distribution system to download and/or distribute to the public certain of the Copyright Recordings, and as to each Defendant, have provided a sample list of the copyrighted recordings each Defendant is alleged to have downloaded and/or distributed. (Compl. ¶ 25.) In addition, Exhibit A to the Complaint provides sufficient details as to each Defendant regarding his or her IP Address, the P2P Network used (Gnutella), number of audio files accessed, and sample lists of the copyrighted recordings actually downloaded and/or distributed. These factual allegations clearly meet the notice pleading and *Twombly* standards to survive a Rule 12(b)(6) motion. *See Sony Music Entm't Inc. v. Does 1 - 40,* 326 F.Supp. 2d 556, 565 (S.D.N.Y. 2004); *LaFace Records, LLC v. Does 1-5,* No. 2:07-cv-187,

2008 WL 513508, * 5 (W.D.Mich. Feb. 22, 2008).

Accordingly, the Court will deny Doe # 3's Motion to Dismiss pursuant to Rule 12(b)(6).

### B. Motion to Dismiss Claims Against Doe # 3 for Improper Joinder

Next, the Court will consider the motion to dismiss the claims against Doe # 3 for improper

joinder. At the outset, the Court notes that the appropriate remedy for misjoinder is severance, not

dismissal. *See* Fed.R.Civ.P. 21; *Elektra Entm't Group, Inc. v. Does 1 - 9*, No. 04 Civ. 2289 (RWS),

2004 WL 2095581, * 6 (S.D.N.Y. Sept. 8, 2004) (citations omitted). Accordingly, the Court will

treat Doe # 3's motion as a motion for severance.[5]

Fed.R.Civ.P. 20(a)(2) provides that defendants may be joined in one action if:

>    (A)    any right to relief is asserted against them jointly, severally,
>           or in the alternative with respect to or arising out of the same
>           transaction, occurrence, or series of transactions or
>           occurrences; and
>    (B)    any question of law or fact common to all defendants will
>           arise in the action.

Rule 20 further provides that the court may issue any order that it deems necessary, including an

order for separate trials, to protect a party against embarrassment, delay, expense, or other prejudice

that arises from inclusion of claims by or against another party. Fed.R.Civ.P. 20(b).

In deciding whether joinder is appropriate, district courts are vested with broad discretion,

even when the requirements of Rule 20(a) have been satisfied. *Elektra Entm't,* 2004 WL 2095581,

at *6 (citing *Ghaly v. U.S. Dep't of Agriculture,* 228 F.Supp. 2d 283, 292 (S.D.N.Y. 2002)). The

underlying policy for the permissive joinder rule is to promote trial convenience and to expedite the

final resolution of litigation. *Id.* (citing *Puricelli v. CNA Ins. Co.,* 185 F.R.D. 139, 142 (N.D.N.Y.

---

5. The Court notes that Doe # 3 is not represented by counsel at the current time, and therefore,
the Court may liberally construe Doe # 3's filings.

1999) (other citation omitted)); *Mosley v. Gen. Motors Corp.,* 497 F.2d 1330, 1332 (8th Cir. 1974)

(citing 7 C. Wright, *Federal Practice & Procedure* § 1652 at 265 (1972)).  Thus, the trend under the

federal rules "is toward entertaining the broadest possible scope of action consistent with fairness

to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers*

*of Am. v. Gibbs,* 383 U.S. 715, 724 (1966) (footnote omitted).

      In determining whether the facts alleged in a given case constitute a single transaction or

occurrence under Rule 20, courts have generally adopted a case-by-case approach. *Mosley,* 497 F.2d

at 1333 (citing 7 C. Wright, *Federal Practice & Procedure* § 1653 at 270).  Relying on the Supreme

Court's interpretation of the terms "transaction or occurrence" as contained in Fed.R.Civ.P. 13(a),[6]

the court of appeals in *Mosley* concluded by analogy that "Rule 20 would permit all reasonably

related claims for relief by or against different parties to be tried in a single proceeding.  Absolute

identity of all events is unnecessary."  497 F.2d at 1333.[7]

      Doe # 3 makes three arguments in support of its position that joinder here is improper.  First,

Doe # 3 argues that Plaintiffs' allegations regarding the basis for joinder of Does 1-9 (Compl. ¶ 20)

do not satisfy the requirements of Rule 20, in that "mere allegations of similar acts violating a single

law, even if those acts use a common infrastructure such as the Internet or a particular network, do

---

6.  In construing the meaning of the term "transaction" for purposes of Rule 13(a), the Supreme
Court has noted that "'[t]ransaction' is a word of flexible meaning.  It may comprehend a series
of many occurrences, depending not so much upon the immediateness of their connection as
upon their logical relationship." *Moore v. New York Cotton Exchange,* 270 U.S. 593, 610
(1926).

7.  In *Mosley,* each of ten plaintiffs alleged that he had been injured by the same general policy
of discrimination by the defendant corporation.  The court of appeals concluded that a company-
wide policy purportedly designed to discriminate against blacks in employment arose out of the
same series of transactions or occurrences for purposes of Rule 20(a).  497 F.2d at 1334.

-8-

not create the common nexus of facts required to meet the transactional test set forth in the Rule."
(Def. Doe # 3's Mem. in Supp. at 17.)  Doe # 3 submits that in the context of a copyright action
against multiple defendants, the transactional test requires either concerted action or some other
direct connection between the defendants beyond the infrastructure they use and the fact that they
all happened to be accused of a similar act.  (*Id.*)  In support, Doe # 3 cites a number of non-
precedential district court opinions involving very similar facts in which the courts found misjoinder
and ordered the claims severed.[8]  Second, Doe # 3 contends that Defendants will be prejudiced by
the increased expenses from their counsel having to review the filings by and against each
Defendant, jury confusion, and disclosure of confidential student information to other defendants,
that will result from the improper joinder of nine Defendants.  Finally, Doe # 3 argues that improper
joinder hinders this Court's administration of justice by disproportionately weighing on its resources
without the concomitant filing fees, and by skewing the Court's tracking of case dispositions.[9]

   In response to Doe # 3's arguments, Plaintiffs counter that they have satisfied the transaction
and occurrence requirements of Rule 20, and numerous courts addressing this issue under identical
facts have found joinder appropriate.[10]  In addition, Plaintiffs submit that joinder here promotes the

---

8.  *See, e.g., Interscope Records v. Does 1-25,* No. 06:04-CV-197-ACC-DAB, 2004 U.S. Dist.
LEXIS 27782 (M.D. Fla. Apr. 1, 2004); *Bridgeport Music, Inc. v. 11C Music,* 202 F.R.D. 229,
231 (M.D. Tenn. 2001).

9.  In support of this argument, Doe # 3 cites two unreported, unpublished district court opinions,
without attaching copies.  *See* Notes 46-48 to Def. Doe # 3's Mem. in Supp. at 20.)

10.  In support of this statement, Plaintiffs refer the Court to Exhibit 1, attached to their
Memorandum of Law in Opposition to the Motion to Quash Subpoena, which lists the names of
over 300 cases in which the district courts allegedly entered orders upholding joinder of multiple
doe defendants under identical facts.  The Court will not accept carte blanch a party's *description*
of the ruling in a case without either a copy of the opinion and order or a citation to an electronic
database or official reporter where that opinion and order can be located.  Without that, the Court
has no knowledge of the facts and/or circumstances that went into the deliberations in making

goals of efficiency and judicial economy.

A review of the record indicates that the copyright infringement claims alleged against Does 1 through 9 are not logically related and therefore do not constitute the same transaction or occurrence, or series of transactions or occurrences.  First, the complaint does not contain any allegation that the nine Defendants are jointly or severally liable to the sixteen Plaintiffs.  Second, Plaintiffs have failed to allege any facts tending to show that one or more of the Defendants has actually downloaded songs from another Defendant, which could conceivably link the Defendants or show they acted in concert.   Other district courts faced with the same allegations to connect the defendants have concluded those allegations were insufficient to satisfy the transactional requirement.  *See, e.g., Interscope Records v. Does 1 - 25,* No. 6:04-cv-197-Orl-22DAB, 2004 U.S. Dist. LEXIS 27782, * 15-16 (M.D.Fla. Apr. 1, 2004) (holding "same transaction requirement requires joint action or liability on the part of the Defendants and is not satisfied by the fact that the Defendants accessed the songs through [the same] peer-to-peer network, or the fact that Defendant [sic] are 25 of the 2.1 million subscribers who access the Internet through [the same ISP]."); *LaFace Records, LLC v. Does 1 - 38,* No. 5:07-CV-298-BR, 2008 U.S. Dist. LEXIS 14544, * 7-8 (E.D.N.C. Feb. 27, 2008) (same); *Arista Records, LLC v. Does 1 - 27,* Civ. No. 07-162-B-W, 2008 WL 222283, * 6 n. 5 (D. Me. Jan. 25, 2008) (same); *BMG Music v. Does 1 - 4,* No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, * 5-6 (N.D.Cal. July 31, 2006) (same); *Elektra Entm't,* 2004 WL 2095581, at * 6-7 (same);  *Bridgeport Music, Inc. v. 11C Music,* 202 F.R.D. 229, 231 (M.D. Tenn. 2001) (same).

The courts in a number of these cases also rejected the plaintiffs' argument that they suffered

---

the rulings in those 300 plus cases.

the same harm from the alleged infringement of their copyrights by all of the defendants to establish the relatedness of the transactions for purposes of Rule 20. *Interscope Records,* 2004 U.S. Dist. LEXIS 27782, at * 15 (citing *Bridgeport Music,* 202 F.R.D. at 232). The courts reasoned that if the transactional test could be satisfied by merely alleging that the plaintiffs suffered the same harm from alleged violations of their copyrights, "a copyright plaintiff could join as defendants any otherwise unrelated parties who independently copy material owned by the plaintiff." *Bridgeport Music,* 202 F.R.D. at 232. Moreover, under this logic, there would be virtually no limit to the number of parties that could be joined, which would effectively nullify the transactional requirement.

Other than alleging that Defendants used the same peer-to-peer network to access the internet and download and/or distribute the copyrighted recordings through the same ISP, Carnegie Mellon University, the Plaintiffs here have failed to allege any other facts to connect the Defendants. None of the Defendants downloaded and/or distributed the same copyrighted recordings belonging to the same set of Plaintiffs, and each of the Defendants accessed a different number of audio files on different dates. (Ex. A to Compl.)[11] Specifically, with regard to Doe # 3, the alleged unlawful downloading and/or distribution occurred with regard to seven different copyrighted recordings owned by six of the Plaintiffs, and said conduct is alleged to have occurred on February 28, 2007. None of the other Defendants is alleged to have downloaded and/or distributed any of the same

---

11. The only exception is that Doe # 1 and Doe #2 accessed the peer-to-peer network on the same date, February 6, 2007. However, Does # 1 and #2 had only two Plaintiffs in common–UMG Recordings, Inc. and Sony BMG Music Entertainment. Doe # 1 allegedly violated the copyrights of two other Plaintiffs, Capitol Records and Virgin Records America, Inc., while Doe # 2 allegedly violated the copyrights of three other Plaintiffs, Atlantic Recording Corporation, Elektra Entertainment Group Inc., and Priority Records LLC. Doe # 1 accessed 407 audio files, while Doe # 2 accessed 286 audio files. (Ex. A to Compl.)

copyrighted recordings that Doe # 3 is alleged to have downloaded and/or distributed.  Therefore, since the claims against the different Defendants most likely will involve separate issues of fact and separate witnesses, different evidence, and different legal theories and defenses, which could lead to jury confusion, separate trials will be required for each Defendant.

The cases cited by Plaintiffs in support of their position are distinguishable.  None of those cases involved the alleged infringement of copyright owners' exclusive rights to their copyright sound recordings, but rather, discussed generally the satisfaction of the requirements for permissive joinder under Rule 20(a).  In addition, as noted earlier, Plaintiffs have failed to provide the Court with copies of unreported decisions allegedly on point, and the Court has not found any authority to suggest that joinder of Does 1 - 9 is appropriate here.

Therefore, given the different factual contexts of the alleged infringement for each Defendant and the absence of any evidence showing joint action by Defendants, other than their use of the same peer-to-peer network to access the copyright recordings and the same ISP, the Court finds that Plaintiffs have failed to satisfy the requirements for permissive joinder under Rule 20(a). Accordingly, the Court will order the claims against Does # 1 -2, and 4 - 9, be severed.

**C.**     **Motions to Quash Subpoena and Vacate**
           **Order Granting Expedited Discovery**

In support of its motion to quash the subpoena, Doe # 3 submits four arguments: (1) 47 U.S.C. § 551(2)(B), which authorizes cable operators to disclose personally identifiable information when ordered to do so by a court, does not support the Court's order because CMU is not a cable operator under the Cable Communications Policy Act of 1984, 47 U.S.C. § 551(c)(2)(B) ("CCPA"); (2) the Digital Millennium Copyright Act ("DMCA"), specifically 17 U.S.C. § 512(h), does not provide authority for a subpoena under the circumstances at issue; (3) the subpoena is not

appropriate under Rules 26 and 45 of the Federal Rules of Civil Procedures; and (4) the subpoena is overly broad and will unnecessarily disclose confidential information.  In response, Plaintiffs submit that their request to serve a subpoena on the ISP was not predicated on either the CCPA or the DMCA, and therefore the cases cited by Doe # 3 with regard to those statutes are simply inapposite here.  Plaintiffs further argue that Doe # 3 has failed to identify any basis under Rule 45(c)(3) to support its motion to quash the subpoena, nor could it as Doe # 3's factual arguments are simply not a valid basis on which to quash a subpoena.  Plaintiffs submit that Doe # 3's arguments are premature, and Doe # 3 will have ample opportunity to deny Plaintiffs' allegations and to contest their theory of the case.  Finally, Plaintiffs submit that the First Amendment does not protect copyright infringement, and even if Doe # 3's internet activity was entitled to some protection, any expectation in remaining anonymous was minimal and clearly outweighed by Plaintiff's interests in disclosure.

As a preliminary matter, the Court notes that normally the person or entity seeking to quash a subpoena is the person or entity who has been served with the subpoena and must comply with the subpoena's directives.  Indeed, all of the bases for quashing a subpoena under Rule 45(c)(3)(A) appear to be directed to the entity upon whom the subpoena was served.  On the other hand, Rule 26 provides a mechanism for parties to object to discovery on a number of grounds.[12]  Doe # 3 is named as a Defendant in the instant matter; however, because Plaintiffs have not yet ascertained Doe

---

12.  If a party believes that the discovery sought by an opposing party is either not relevant to a claim or defense, or if relevant, seeks information that is either privileged, or unreasonably cumulative or duplicative, or can be obtained from another source that is more convenient, or less burdensome or expensive, or seeks confidential commercial information, then the party objecting to such discovery may request, and the Court may grant, a protective order upon good cause shown, either limiting the scope of, or forbidding, disclosure or discovery.  *See* Fed.R.Civ.P. 26(b)(2)(C) & (c).

# 3's identity, Doe # 3 has not been served with original process, thus the need for an *ex parte* application for expedited discovery.  Before responding to the subpoena, CMU sent a copy of it to Doe # 3, who has intervened at this juncture to lodge objections to the subpoena with the sole intent of preventing  Plaintiffs from discovering Doe # 3's identity and contact information, and therefore preventing Plaintiffs from proceeding with their copyright infringement claims against Doe # 3.  For purposes of the pending motions, none of the arguments raised by Doe # 3 appears to fall within the scope of objections to discovery under Rule 26.  The Court turns now to the specific arguments raised by Doe #3.

Doe # 3's first two arguments in support of quashing the subpoena are wholly lacking in merit.  Nowhere in the Order dated December 18, 2007 (Doc. No. 5) does the Court state that 47 U.S.C. § 551(2)(B) provides authority for serving a subpoena on CMU, nor is Plaintiffs' *Ex Parte* Application predicated on that statute.  Likewise,  neither Plaintiffs' request for expedited discovery nor the Court's order relies on the DMCA for issuing the subpoena, but rather, relies on 20 U.S.C. § 1232g(b)(2)(B) of the Family Educational Rights and Privacy Act ("FERPA"),[13] and therefore, the procedural requirements in section 512(h) do not apply here.  Accordingly, Doe # 3's first two arguments are devoid of merit.

To the extent that Doe # 3 suggests that FERPA does not permit disclosure of personally identifiable information, that argument is equally devoid of merit.  Section 1232g(b)(2) expressly

---

13.  In their *Ex Parte* Application, Plaintiffs specifically informed the Court that they intended to serve a Rule 45 subpoena on the ISP.  In their Memorandum of Law in support thereof, Plaintiffs indicated that issuance of a subpoena was authorized by FERPA, 20 U.S.C. § 1232g(b)(2)(B), and requested the Court to indicate as much in its order granting expedited discovery.  The Order dated December 18, 2007 specifically states that disclosure of the information requested in the subpoena is ordered pursuant to 20 U.S.C. §1232g(b)(2)(B). (Doc. No. 5.)

authorizes a university to disclosure a student's "directory information" without the student's prior consent so long as certain conditions have been satisfied. "Directory information" is defined under the regulations promulgated pursuant to FERPA as:

> information contained in an education record of a student that would not generally be considered harmful or an invasion of privacy if disclosed. It includes, but is not limited to, the student's name, address, telephone listing, electronic mail address, photograph, date and place of birth, major field of study, dates of attendance, grade level, enrollment status . . . , participation in officially recognized activities and sports, weight and height of members of athletic teams, degrees, honors and awards received, and the most recent education agency or institution attended.

34 C.F.R § 99.3 (citing as authority 20 U.S.C. § 1232g(a)(5)(A)). In the case at bar, all of the information requested in the subpoena, with the exception of the MAC addresses, constitute "directory information." The MAC address does not appear to fall within the purview of FERPA,[14] and therefore, is not restricted by FERPA. In addition, all of the conditions for disclosure have been satisfied here. Disclosure is sought in compliance with a judicial order pursuant to a lawfully issued subpoena, and CMU has provided Doe # 3 with notice of the subpoena in advance of compliance, and indeed, Doe # 3 has sought protective action by filing the pending motions. 20 U.S.C. §1232g(b)(2)(B); 34 C.F.R. § 99.31(a)(9)(i) & (ii); *see also Outreach Ctr. v. City of Philadelphia,* 233 F.R.D. 419, 420 (E.D.Pa. 2005) (holding "[u]nder FERPA, an educational institution may release personally identifiable information contained in a student's records if the institution is subpoenaed."); *Warner Bros. Records, Inc. v. Does 1-14,* No. 8:07-cv-625-T-24TGW, 2007 WL

---

14. The MAC address is comprised of six two-digit hexadecimal numbers separated by colons, that uniquely identifies each piece of computer hardware connected to the university's network. http://www.techterms.com/definition/macaddress (last visited April 1, 2008). Accordingly, the MAC address would not be part of a student's "education records," as that term is defined under 34 C.F.R. § 99.3.

4218983, * 2 (M.D.Fla. Nov. 29, 2007) (same). Accordingly, the Court finds that FERPA does not

bar the disclosure of the information requested in the subpoena issued to CMU regarding Doe # 3.

 In its third argument in support of quashing the subpoena, Doe # 3 contends that the Federal

Rules of Civil Procedure do not permit subpoenas under the present circumstances. According to

Doe # 3, these "circumstances" consist of alleged infirmities with the collection of the data,[15] and

objections that CMU may raise if it were seeking to quash the subpoena,[16] which it is not.

 Neither of these "circumstances" provides a basis under Rule 45(c)(3)(A) for quashing the

subpoena served on CMU regarding Doe # 3.[17] If Doe # 3 believes that it has been improperly

identified by the ISP, Doe # 3 may raise, at the appropriate time, any and all defenses, and may seek

discovery in support of its defenses.

 Equally unavailing is Doe # 3's argument that its First Amendment rights will be violated

if the subpoena is not quashed because Plaintiffs have failed to establish a *prima facie* claim of

copyright infringement, and therefore, its expectation of privacy[18] outweighs Plaintiffs' interests in

obtaining the identities of the alleged infringers. It is clear that the First Amendment does not

---

15. Doe # 3 contends that Plaintiffs' intended method of identification of the alleged infringers is not reliable.

16. Doe # 3 suggests that Plaintiffs' subpoena seeks information that CMU does not readily possess and therefore would be forced to undertake an investigation to create discovery for Plaintiffs, and obligation not imposed by Rule 45. Doe # 3 offers no foundation for this allegation, but in any event, is not the appropriate person to lodge this objection under Rule 45(c)(3)(A).

17. Ordinarily, a party wishing to object to discovery would move for a protective order under Rule 26(c). As explained above, Doe # 3 has not provided any basis, let alone a "good cause" basis, under Rule 26(c) for protecting it from release of information leading to its identity and location.

18. Doe # 3 contends the CMU user files contain highly confidential and sensitive information, the disclosure of which could violate the subscribers' privacy rights.

protect copyright infringement. *See, e.g., Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 555-56 (1985). In cases such as the one *sub judice,* where anonymous persons are allegedly using P2P file copying networks to download, distribute, or make sound recordings available, such conduct has been found to constitute protected First Amendment speech. *Sony Music,* 326 F.Supp. 2d at 564. However, the protection afforded such speech has been limited, and when weighed against other factors supporting disclosure of the actors' identities, has given way. *Id.* at 564-67.

In *Sony Music,* the district court considered five factors in weighing the need for disclosure versus First Amendment interests: "(1) concrete showing of a *prima facie* claim of [copyright infringement], . . . (2) specificity of the discovery request, . . . (3) the absence of alternative means to obtain the subpoenaed information, . . . (4) a central need for the subpoenaed information to advance the claim, . . . and (5) the [objecting] party's expectation of privacy." *Id.* at 564-65 (internal citations omitted). The district court in *Sony Music* concluded, under almost identical facts, that the doe "defendants' First Amendment right to remain anonymous must give way to the plaintiffs' right to use the judicial process to pursue what appear to be meritorious copyright infringement claims." *Id.* at 567 (internal citations omitted).

Applying these factors to the case at bar, the Court concludes that Plaintiffs' need for disclosure clearly outweighs Doe # 3's First Amendment interest in remaining anonymous. As to the first factor, the Court finds the Complaint and Exhibit A thereto allege sufficient facts to establish a *prima facie* claim of copyright infringement against the Doe Defendants. At this stage of the litigation, Plaintiffs have set forth in Exhibit A sufficient evidence of acts of infringement by subscribers identified by IP addresses. *See, id.* at 565 (finding a concrete showing of *prima facie* copyright infringement based on virtually the same types of evidence). With regard to the second

-17-

factor, the subpoena directed to CMU is narrowly tailored to provide only that information sufficient to identify the Defendants.[19]  Moreover, Because the Court has ordered the claims severed, the possibility of other Defendants receiving each other's highly confidential information has been eliminated.  As to the third factor, such information/discovery is needed to be able to effectuate service of the Complaint on the Doe Defendants[20] and is not available from any other source.  (Decl. of Carlos Lunares, ¶23 (Ex. A to Mem. of Law in Supp. of *Ex Parte* Application).)  Without the subpoenaed information,  Plaintiffs will be unable to proceed against the alleged infringers and recover for the infringement of their copyrights.  Therefore, the fourth factor weighs in favor of disclosure.  Finally, Doe # 3's expectation of privacy is minimal given the nature of the P2P file sharing.  *See In re Verizon Internet Serv., Inc.,* 257 F.Supp. 2d at 244, 267 (D.D.C. (2003) (holding "if an individual subscriber opens his computer to permit others, through peer-to-peer file-sharing, to download materials from that computer, it is hard to understand just what privacy expectation he or she has after essentially opening the computer to the world."), *rev'd on other grounds, sub nom Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Serv., Inc.,* 351 F.3d 1229 (D.C. Cir. 2003).  Thus, it is clear that a Doe Defendant, who allegedly used the internet to unlawfully download and disseminate copyrighted sound recordings has a minimal expectation of privacy in remaining anonymous, and such expectation is clearly outweighed by Plaintiffs' *prima facie* showing of copyright infringement, the narrowly tailored discovery request directed to CMU, and the lack of alternate means to obtain the identities of the Doe Defendants, without which Plaintiffs will be

---

19.  For this reason, the Court further finds that the subpoena is not overly broad.

20.  For this reason, the cases cited by Doe # 3 regarding discovery being allowed only after service of defendants are inapposite.

-18-

unable to proceed.

Finally, as to Doe # 3's request that the *Ex Parte* Application be vacated, Doe # 3 submits that there is a split of authority as to whether the standard to be used in determining whether to grant the *Ex Parte* Application should have been the more stringent standard enunciated in *Notaro v. Koch,* 95 F.R.D. 403, 405 (S.D.N.Y. 1982), which mainly follows the standard required for obtaining a preliminary injunction,[21] as opposed to the good cause or reasonableness standard actually applied here.[22] Doe # 3 argues that regardless of which standard is applied, the cases cited by Plaintiffs do not support expedited discovery here, but actually support Doe # 3's position, as those cases involved requests for a preliminary injunction, unlike the present lawsuit, and absent such a request, no authority exists for granting expedited discovery under Rule 45. The Court disagrees with Doe # 3. None of the cases cited by the parties or reviewed by the Court hold that expedited discovery

---

21. The *Notaro* factors include: "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery [outweighs] the injury that the defendant will suffer if the expedited discovery is granted." 95 F.R.D. at 405.

22. Good cause is usually found where the plaintiff's need for expedited discovery, in consideration of the administration of justice, outweighs the possible prejudice or hardship to the defendant. *Semitool, Inc. v. Tokyo Electron America, Inc.,* 208 F.R.D. 273, 276 (N.D.Cal. 2002); *Metal Bldg. Components, L.P. v. Caperton,* CIV-04-0256 MV/DJS, 2004 U.S. Dist. LEXIS 28854, *10 (D.N.M. Apr. 2, 2004). Situations where good cause is frequently found include when a party seeks a preliminary injunction, and when physical evidence may be consumed or destroyed with the passage of time, thus causing one or more parties to be disadvantaged. *Metal Bldg. Components,* 2004 U.S. Dist. LEXIS 28854, at * 10-11 (citing *Ellsworth Assocs., Inc. v. United States ,* 917 F.Supp. 841, 844 (D.D.C. 1996); *Pod-Ners, LLC v. Northern Feed & Bea of Lucerne LLC,* 204 F.R.D. 675, 676 (D. Col. 2002)). In addition, courts have frequently found good cause exists in cases involving claims of infringement and unfair competition. *Semitool,* 208 F.R.D. at 276 (citing *Benham Jewelry Corp. v. Aron Basha Corp.,* No. 97 CIV 3841 RWS, 1997 WL 639037, * 20 (S.D.N.Y. Oct. 14, 1997)); *Pod-Ners*, 204 F.R.D. at 676 (citing *Benham Jewelry, supra*).

under Rule 26(d) can only be granted in situations where the plaintiff has requested a preliminary injunction. Indeed, in a case on all fours with the present dispute, the district court found that plaintiffs demonstrated sufficient good cause to warrant expedited discovery. *See Interscope Records v. Does 1 - 14,* No. 5:07-4107-RDR, 2007 U.S. Dist. LEXIS 73627, * 4 (D. Kan. Oct. 1, 2007). In addition, numerous other district courts have also granted expedited discovery to record companies, such as Plaintiffs, in copyright infringement actions seeking to identify Doe defendants upon a showing of good cause. (*See, e.g.,* Pls.' Ex. B attached to Mem. of Law in Supp. of *Ex Parte* Application (Doc. 4-3).) This Court previously found good cause existed for ordering expedited discovery. Doe # 3 has failed to provide any factual or legal basis to suggest otherwise. Accordingly, the Court declines Doe # 3's invitation to vacate its order granting expedited discovery. The Court will order the stay of discovery lifted as to Doe # 3, vis a vis the subpoena issued to CMU.

III.    **CONCLUSION**

For the reasons set forth above, the Court will deny Doe # 3's Motion to Dismiss the Complaint, Motion to Quash the Subpoena, and Motion to Vacate the Order Granting Expedited Discovery (Doc. No.6). However, the Court will grant Doe # 3's Motion for Severance (Doc. No. 6). An appropriate Order follows.

**ORDER**

**AND NOW, this 3rd day of April, 2008,** after due consideration of Doe # 3's Motion to Vacate the Order Granting Expedited Discovery, Motion to Dismiss the Complaint, Motion to Quash

the Subpoena, and Motion to Dismiss for Improper Joinder (Doc. No. 6), and Plaintiffs' responses thereto, and the memoranda of law in support and in opposition thereto,

**IT IS HEREBY ORDERED** that the Motion to Dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6) is **DENIED;** however, Doe # 3 is not precluded from raising the issues set forth therein in a motion for summary judgment at the appropriate time following discovery.

**IT IS FURTHER ORDERED** that Doe # 3's Motion to Dismiss the Claims against it for Improper Joinder, which the Court has converted to a Motion for Severance, is **GRANTED**. All claims except those raised by the Plaintiffs against Doe # 3 shall be **SEVERED.** The Plaintiffs' claims against Defendants Does # 1 - 2 and 4 - 9 shall be **DISMISSED WITHOUT PREJUDICE** effective April 21, 2008.[23] Plaintiffs may initiate eight (8) separate new actions against Defendants Does # 1-2 and 4-9 on or before April 21, 2008. Each new action filed shall include a civil cover sheet, the appropriate filing fee, and a separate complaint for each individual Doe Defendant, and Plaintiffs shall provide notice to this Court if and when the new civil actions are commenced. Under this District's local rules of civil procedure, the cases against the individual Defendants will not meet the requirements of relatedness. W.D.PA.L R 40.1.D.2.

**IT IS FURTHER ORDERED** that Doe # 3's Motion to Vacate the Court's Order Granting Expedited Discovery is **DENIED**.

**IT IS FURTHER ORDERED** that Doe # 3's Motion to Quash Subpoena is **DENIED.**

**IT IS FURTHER ORDERED** that the Court's Order dated February 19, 2008 staying all discovery as to Doe # 3 is hereby lifted effective April 21, 2008. However, should an appeal be filed

---

23. Should Plaintiffs file an appeal to the District Judge on the issue of severance, the dismissal shall be stayed, and should the appeal be denied, Plaintiffs shall have 14 days from the disposition of the appeal to take the action described above.

on or before April 21, 2008, the stay will remain in effect until a decision is issued on the appeal. If the appeal is denied, the stay will be lifted on the date of disposition of the appeal.

**IT IS FURTHER ORDERED** that Plaintiffs shall serve as soon as practicable on the ISP, Carnegie Mellon University, a copy of this Opinion and Order, as well as all future filings dealing with the matters in this Order, including any appeal to the district judge, and file proof of such service with the Court.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Rules 72.1.3.B. and 72.1.4.B. of the Western District of Pennsylvania Local Rules governing Magistrate Judges, the parties are allowed ten (10) days from the date of issuance of this Order to file a notice of appeal, which designates the part or part(s) of the Order objected to and the basis for said objection. Any party opposing the appeal shall have ten (10) days from the date of service of the notice of appeal to respond thereto. Failure to file a timely notice of appeal may constitute a waiver of any appellate rights.

BY THE COURT:

LISA PUPO LENIHAN
U.S. Magistrate Judge

cc:    All Counsel of Record
       *Via Electronic Mail*

       Doe # 3
       P.O. Box 241532
       Little Rock, AR 72223
       *Via U.S. Mail, First Class*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Arista Records, LLC, *et al.*,                    :

        Plaintiffs                    :           Case No.  2:07-cv-961

      v.                    :           Judge Graham

Does 1-9,                    :           Magistrate Judge Abel

        Defendants                    :

# Order

# and Report & Recommendation

This matter is before the Magistrate Judge on Doe #9's November 21, 2007
Motion to Vacate the Order granting expedited discovery, Motion to Quash the
subpoena issued by Plaintiff Arista Records upon The Ohio State University (OSU)
pursuant to Rule 45 of the Federal Rules of Civil Procedure, and Motion to Dismiss
Plaintiff's copyright infringement claim against Doe #9 for failure to state a claim and
improper joinder.   For the reasons set out below, the Magistrate Judge DENIES
Defendant's November 21, 2007 Motions to Vacate and Quash (Doc. 8), RECOM-
MENDS that Defendant's Motion to Dismiss (Doc. 8) be DENIED, and GRANTS
Defendant's Motion to Dismiss the claim against Doe No. 9 for improper joinder (Doc.
8) and SEVERS all Does, except Doe No. 1, from this action.

## I.    Background

Plaintiffs, various members of the music recording industry, filed a complaint against nine unknown individuals for copyright infringement.  With the complaint, Plaintiffs filed an application for leave to take immediate discovery under Federal Rules of Civil Procedure 26 and 45.

Plaintiffs allege the nine unknown Defendants used peer-to-peer (P2P) online file sharing systems to download or distribute Plaintiffs' copyrighted music.  Plaintiffs have identified the computer used by each of the nine defendants for the infringing activities by eleven digit Internet Protocol (IP) address.  Furthermore, Plaintiffs have provided a list of some of the songs that were improperly downloaded or distributed at each IP address. (Exhibit A to complaint).  Plaintiffs allege each Defendant has illegally down-loaded or distributed multiple files.   The IP addresses were assigned by OSU, the third party internet service provider (ISP).

## II.    Expedited Discovery and Subpoena

Defendant argues that the discovery order should be set aside because neither the Digital Millennium Copyright Act, 17 U.S.C. § § 512(h), (DMCA) nor the Federal Rules of Civil Procedure authorize a subpoena against an ISP that does not store copy-right infringing material.  Additionally, Defendant asserts that the subpoena should be quashed because it is overbroad and discloses information protected by the Family Educational Rights and Privacy Act, 20 U.S.C. § § 1232(g) (FERPA).

### A. Expedited Discovery is Authorized by the Federal Rules of Civil Procedure and not Precluded by the DMCA

The DMCA was "designed to strike a balance between the interests of ISPs in avoiding liability for infringing use of their services and the interest of copyright owners in protecting their intellectual property and minimizing online piracy." *Recording Indus. Ass'n v. Charter Communs., Inc. (In re Charter Communs., Inc.)*, 393 F.3d 771, 774 (8th Cir. 2005). To that end, § 512(h) of the DMCA specifically authorizes subpoenas seeking IP user identification to be issued to an ISP that stores copyright infringing materials on its servers, while protecting that ISP from liability if it then removes all infringing, stored material. 393 F.3d at 776-77. Defendant alleges that because OSU does not store infringing material and is merely a conduit that allows data transfer between users, that the DMCA, therefore, does not authorize a subpoena in this case.

Plaintiffs, however, have not sought discovery or served the subpoena under DMCA authorization; rather, Plaintiffs sought discovery under Rule 45 of the Civil Rules of Federal Procedure. Rule 45 governs the issuance of subpoenas for the giving of deposition and trial testimony, and the production of documents. Pursuant to this Rule, a party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. Rule 45(c)(1).

The Rule provides, in part, that a district court (1) shall quash or modify a subpoena if it subjects a person to undue burden, and (2) may quash or modify a subpoena

3

if it requires disclosure of a trade secret or other confidential research, development, or
commercial information.  Rule 45(c)(3)(A)(iv) and (B)(i).  In the latter case, a court may
order appearance or production upon specified conditions if the party in whose behalf
the subpoena is issued shows a substantial need for the testimony or material that
cannot be otherwise met without undue hardship and assures that the person to whom
the subpoena is addressed will be reasonably compensated.[1]

Defendant does not provide any argument that lack of authorization for disco-
very under the DMCA precludes normal means of discovery under the Federal Rules of
Civil Procedure.   On the other hand, a number of district courts have found good cause
to permit expedited discovery under the Federal Rules where the recording industry
has IP addresses for individuals who have illegally distributed or downloaded music,
but do not have the name of the person whose computer was assigned that address. *See
Capitol Records, Inc. v. Doe,* No. 07-cv-1570, 2007 WL 2429830 (S.D.Cal. Aug. 24, 2007)
(granting subpoena for information from University of California, San Diego); *Warner
Bros ., Records Inc. v. Does 1-4,* No. 2:07-cv-424, 2007 WL 1960602 (D.Utah July 5, 2007)
(granting subpoena for information from Off Campus Telecommunications); *Warner*

---

[1] Whether a subpoena imposes an "undue burden" upon a witness is a case specific inquiry that turns on "such
factors as relevance, the need of the party for the documents, the breadth of the document request, the time period
covered by it, the particularity with which the documents are described and the burden imposed." *Concord Boat
Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 53 (S.D.N.Y. 1996) (quoting *United States v. Int'l Bus. Mach. Corp.*, 83
F.R.D. 97, 104 (S.D.N.Y. 1979)).  Courts are required to balance the need for discovery against the burden imposed
on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against
disclosure. *See Katz v. Batavia Marine & Sporting Supplies*, 984 F.2d 422, 424 (Fed. Cir. 1993); *Echostar Commun-
ications Corp. v. The News Corporation Ltd.*, 180 F.R.D. 391, 394 (D. Colo. 1998); *see also Concord Boat*, 169
F.R.D. at 49; Fed. R. Civ. P. 45(c)(2)(B).  Demonstrating relevance is the burden of the party seeking discovery. *See
Katz*, 984 F.2d at 424-25; *Echostar Communications*, 180 F.R.D. at 394; *Compaq Computer Corp. v. Packard Bell
Electronics, Inc.*, 163 F.R.D. 329, 335 (N.D. Cal. 1995).

*Bros. Records, Inc. v. Does 1-20,* No. 07-cv-1131, 2007 WL 1655365 (D.Colo. June 5, 2007)

(granting subpoena for information from Quest Communications); *Arista Records, LLC v.*

*Does 1-9,* No. 07-cv-628, 2007 WL 1059049 (D.Colo. April 4, 2007).

Courts typically have found good cause based upon (1) allegations of copyright

infringement, (2) the danger that the ISP will not preserve the information sought, (3)

the narrow scope of the information sought, and (4) the conclusion that expedited

discovery would substantially contribute to moving the case forward. *See e.g. Capital*

*Records, Inc.* 2007 WL 2429830 at *1. Plaintiffs in this case seek expedited discovery in

order to gain access to documents that would identify each Defendant's true name,

address (current and permanent), telephone number, email address, and Media Access

Control (MAC) address. This Court finds Plaintiffs have established good cause for

departing from the usual course of discovery. Specifically, this Court finds (1) Plaintiffs

have alleged copyright infringement, (2) there is a possibility that the ISP might delete

or otherwise destroy the activity logs which are necessary to identify the individuals

who have been downloading or distributing music files, (3) the discovery request is

narrowly tailored, and (4) the identity of the individuals is necessary to move the case

forward and without this information, Plaintiffs would not be able to determine the

identities of Defendants. Therefore, Defendant's Motion to Vacate expedited discovery

is DENIED.

## B.    Information Requested by the Subpoena is Permissible under

## FERPA

FERPA protects educational records or personally identifiable information from

improper disclosure. *Doe v. Woodford County Bd. of Educ.,* 213 F.3d 921, 926 (6th Cir.

2000). The statute sets out conditions of availability of federal funds for educational

agencies and institutions and provides, in pertinent part, that:

> No funds shall be made available under any applicable program to any
> educational agency or institution which has a policy or practice of per-
> mitting the release of education records (or personally identifiable in-
> formation contained therein other than directory information...) of stud-
> ents without the written consent of their parents to any individual,
> agency, or organization...

20 U.S.C. § § 1232(g)(a) and (b)(1).

FERPA broadly defines "educational records" as "those records, files, docu-

ments, and other materials which (I) contain information directly related to a student;

and (ii) are maintained by an educational agency or institution." *United States v. Miami*

*University,* 294 F.3d 797, 812 (6th Cir.2002) (citing 20 U.S.C. § 1232g(a)(4)(A)).[2] Directory

information is defined in the statute as "the student's name, address, telephone listing,

date and place of birth ..." 20 U.S.C. § 1232g(a)(5)(A). Generally directory information is

---

[2] 20 USC § 1232g (5)

    (A) For the purposes of this section the term "directory information" relating to a student includes the following: the student's name, address, telephone listing, date and place of birth, major field of study, participation in officially recognized activities and sports, weight and height of members of athletic teams, dates of attendance, degrees and awards received, and the most recent previous educational agency or institution attended by the student.
    (B) Any educational agency or institution making public directory information shall give public notice of the categories of information which it has designated as such information with respect to each student attending the institution or agency and shall allow a reasonable period of time after such notice has been given for a parent to inform the institution or agency that any or all of the information designated should not be released without the parent's prior consent.

information not considered harmful or an invasion of privacy if disclosed.  The Ohio State University considers the following information to be 'Directory Information': name, address, e-mail address, telephone number, program of study, enrollment status, dates of attendance, honors awarded, previous institutions attended, participation in officially recognized activities and sports.  *The Ohio State University's Policy Concerning Privacy and Release of Student Education Records.  http://www.ureg.ohio-state.edu/ourweb/more/Content/ferpa_pg1.html.*  Furthermore, the University's policy states that it is not allowed to share information (other than 'Directory Information') without a student's written consent and that a student may limit release of directory information by submitting a request for directory exclusion to the University's registrar.  *Id.*

In this case, plaintiffs are requesting defendant Doe No. 9's name, current and permanent address, telephone numbers, e-mail address, and MAC address.   Most of this information falls within the category of Directory Information under FERPA, which according to the University's policy, does not require defendant's consent to provide to a third party.  *See University Policy*.  Thus, Doe No. 9's name, current and permanent address, telephone numbers, and e-mail address are discoverable and may be released to plaintiffs by the University.  *See id.*   Under the University's policy, to prevent disclosure of directory information to a third party, Doe No. 9 would have had to submit a request to the University's Registrar.  *See id.*  Since Doe No. 9 fails to argue that such a limiting request was given to the University, the University may provide Doe No. 9's directory information to Plaintiffs.

7

Plaintiffs also request Doe No. 9's MAC address, which identifies the device which Doe No. 9 used to connect to the school's network.  The Court finds the MAC addresses are not an "educational record" or "personally identifiable information" like social security numbers, grades, GPAs, student schedules, academic histories, or academic standing .  Therefore, Doe No. 9's MAC address is not within the scope of FERPA, and thus, is not protected by the statute. 20 U.S.C. § 1232g(b)(1).  Therefore, the University may provide Doe No. 9's MAC address to plaintiffs in accordance with the subpoena.  Defendant's Motion to Quash is DENIED.  It is ORDERED that the production be made for attorney's eyes only.  Plaintiff's counsel may provide their clients with the names of the students associated with each IP address and MAC address.  Counsel for Plaintiffs and Doe No. 9 shall submit an appropriate proposed protective order to the court.

### III.    Motion to Dismiss

When considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974); *California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 515 (1972); *Roth Steel Prods. v. Sharon Steel Corp.,* 705 F.2d 134, 155 (6th Cir.1982); *Smart v. Ellis Trucking Co.,* 580 F.2d 215, 218 n. 3 (6th Cir.1978); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). Although the court must apply a liberal construction of the complaint in favor of the party opposing the motion to dismiss, *see Kugler v. Helfant,* 421 U.S. 117,

8

125-26 n. 5 (1975); *Smart,* 580 F.2d at 218 n. 3; *Davis H. Elliot Co. v. Caribbean Utilities Co.,*

513 F.2d 1176, 1182 (6th Cir.1975), a court will not accept conclusions of law or un-

warranted inferences of fact cast in the form of factual allegations. *See Blackburn v. Fisk*

*Univ.,* 443 F.2d 121, 124 (6th Cir.1971); *Sexton v. Barry,* 233 F.2d 220, 223 (6th Cir.1956). In

reading a complaint, however, a court will indulge all reasonable inferences that might

be drawn from the pleading. *See Fitzke v. Shappell,* 468 F.2d 1072, 1076 n. 6 (6th Cir.1972).

　　When determining the sufficiency of a complaint in the face of a motion to dis-

miss pursuant to Fed.R.Civ.P. 12(b)(6), a court will apply the principle that "a complaint

should not be dismissed for failure to state a claim unless it appears beyond a doubt

that the plaintiff can prove no set of facts in support of his claim which would entitle

him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *see also McClain v. Real Estate*

*Bd. of New Orleans, Inc.,* 444 U.S. 232 (1980); *Windsor v. The Tennessean,* 719 F.2d 155, 158

(6th Cir.1983); *Neil v. Bergland,* 646 F.2d 1178, 1184 (6th Cir.1981); *Parker v. Turner,* 626

F.2d 1, 7 (6th Cir.1980). Because the motion under Fed.R.Civ.P. 12(b)(6) is directed solely

to the complaint itself, *see Roth Steel Prods.,* 705 F.2d at 155; *Sims v. Mercy Hosp. of Mon-*

*roe,* 451 F.2d 171, 173 (6th Cir.1983), the court must focus on whether the claimant is

entitled to offer evidence to support the claims, rather than whether the plaintiff will

ultimately prevail. *See Scheuer,* 416 U.S. at 236; *McDaniel v. Rhodes,* 512 F.Supp. 117, 120

(S.D.Ohio 1981). A federal court cannot consider extrinsic evidence in determining

whether a complaint states a claim upon which relief can be granted. *See Roth Steel*

*Prods.,* 705 F.2d at 155; *Sims,* 451 F.2d at 173.

The Supreme Court has noted that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is not sufficient to state a cause of action. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1960 (2007). However, this is not to say that a complaint must set down in detail all the particularities of a plaintiff's claim against a defendant. *See United States v. School Dist. of Ferndale*, 577 F.2d 1339, 1345 (6th Cir.1978); *Westlake v. Lucas*, 537 F.2d at 858; *Dunn*, 697 F.2d at 125. Fed.R.Civ.P. 8(a)(2) simply requires a "short and plain statement of the claim showing that the pleader is entitled to relief.[3]" The function of the complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Dunn*, 697 F.2d at 125; *Westlake*, 537 F.2d at 858.

The court will grant a defendant's motion for dismissal under Fed.R.Civ.P. 12(b)(6) if the complaint is without any merit because of an absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. *See generally Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978); *Ott v. Midland-Ross Corp.*, 523 F.2d 1367; *Brennan v. Rhodes*, 423 F.2d 706 (6th Cir.1970). It is not necessary that a plaintiff set forth in a complaint the legal theory on which plaintiff relies if the complaint sets forth sufficient factual allegations to state a claim showing that plaintiff is entitled to any relief which can be granted. *See Rohler v.*

---

[3] The form complaints appended to the Federal Rules of Civil Procedure all include basic facts, such as the date the actionable events took place and a brief description of them.

10

*TRW, Inc.,* 576 F.2d 1260, 1264 (7th Cir.1978); *Bramlet v. Wilson,* 495 F.2d 714, 716 (8th Cir.1974); *New Amsterdam Casualty Co. v. Waller,* 323 F.2d 20, 24-25 (4th Cir.1963).

Defendant argues that Plaintiff has failed to state a claim sufficient to support their claim for relief. In order to establish a claim for copyright infringement, the plaintiff must show that (1) copyright ownership exists in the infringed material, and (2) that the infringer violated at least one of the six rights granted to copyright owners under 17 U.S.C. § 106. 17 U.S.C. § 501; 17 U.S.C. § 106. Plaintiffs have alleged copyright ownership as well as basic facts such as the time of the claimed violation and a brief description of the events. Therefore, Plaintiffs' pleading provides a short and plain statement that alleges both their copyright ownership and violation of one or more of the exclusive rights identified in 17 U.S.C. § 106.[4]

Furthermore, other courts have found similar pleading sufficient for a claim of copyright infringement. *Interscope Records v. Duty*, 2006 WL 988086, *2 (D.Ariz.,2006) (finding that the presence of copyrighted sound recordings in shared files might constitute copyright infringement); *Arista Records LLC v. Greubel*, 453 F.Supp.2d 961, *969 (N.D.Tex.,2006)(clarifying that the liability issue would be more appropriately addressed by a motion for summary judgment after further development of the facts). Therefore, Defendant's Motion to Dismiss for failure to state a claim is DENIED.

---

[4] As reflected on its internet website and reported during congressional hearings, the Copyright Office takes the position that using peer-to-peer networks to copy or distribute copyrighted works without permission infringes the exclusive rights of reproduction and/or distribution. United States Copyright Office, Copyright and Digital Files, http:// http://www.copyright.gov/help/faq/faq-fairuse.html#p2p (last visited Feb. 28, 2008)(answering question "Is it legal to download works from peer-to-peer networks and if not, what is the penalty for doing so?"); *Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks: Hearing Before the Committee on the Judiciary,* 108th Cong. (2003)(statement of Marybeth Peters, Register of Copyrights).

## IV.    Improper Joinder

Doe No. 9 argues that the joinder of the Doe defendants is improper because the only common element between the defendants is their alleged use of the OSU networks. Doe No. 9 therefore moves pursuant to Fed.R.Civ.P. 20 to be severed from this action.

Federal Rule of Civil Procedure 20 lays out the requirements for the permissive joinder of defendants:

> All persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right of relief in respect of or arising out of the same transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

"[T]he remedy for improper joinder is severance ..." *Sony Music,* 2004 WL 1656538, at (citing Fed.R.Civ.P. 21).[5]

Defendant argues that the court should dismiss the claims against them for improper joinder. Specifically, Defendant argues that Plaintiffs have failed to show that the copyright infringement claims against them arise out of the same transaction, occurrence, or series of transactions or occurrences. This Court agrees. Plaintiffs argue that

---

[5]    "[D]istrict courts have broad discretion to decide whether joinder is appropriate, even when the requirements of Rule 20(a) have been met." *Ghaly v. U.S. Department of Agriculture,* 228 F.Supp.2d 283, 292 (S.D.N.Y.2002) (citing *Briarpatch Ltd. v. Pate,* 81 F.Supp.2d 509, 515 (S.D.N.Y.2000)). "The well-established policy underlying permissive joinder is to promote trial convenience and expedite the resolution of lawsuits." *Puricelli v. CNA Ins. Co.,* 185 F.R.D. 139, 142 (N.D.N.Y.1999) (citing *Blesedell v. Mobil Oil Co.,* 708 F.Supp. 1408, 1421 (S.D .N.Y.1989)). The Supreme Court has held that "the impulse [under the Federal Rules] is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mineworkers of America v. Gibbs,* 383 U.S. 715, 724 (1966).
        "Courts have generally adopted a case-by-case approach in determining whether plaintiffs' claims constitute a 'single transaction or occurrence' for purposes of Rule 20." *Puricelli,* 185 F.R.D. at 142 (citing *Mosley v. General Motors Corp.,* 497 F.2d 1330, 1332 (5th Cir.1974); *Blesedell,* 708 F.Supp. at 1412). However, in defining transaction or occurrence, "courts have found Fed.R.Civ.P. 13(a) to be particularly instructive, and have concluded with reference to that Rule that the phrase encompasses 'all logically related claims.' " *Id.* (quoting *Mosley,* 497 F .2d at 1333).

the claims asserted against the various Does arise out of the same series of transactions because each Doe used the same P2P network to commit the exact same type of violation of the law. However, merely committing the same type of violation in the same way does not link defendants together for purposes of joinder.

For proper joinder of multiple parties, both requirements of Rule 20(a) must be satisfied: (1) that the claims for relief arise out of the same transaction, occurrence, or series of transactions or occurrences; and (2) that questions of law or fact common to all defendants will arise in the action. *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). Since the complaint here fails to allege that Plaintiffs' claims against the Defendants arise out of the same transaction or occurrence and there is no assertion that they have acted in concert, joinder is improper. *See BMG Music v. Does 1-4*, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31, 2006) (severing multiple defendants in action where only connection between them was allegation they used same ISP to conduct copyright infringement); *Interscope Records v. Does 1-25*, 2004 U.S. Dist. LEXIS 27782, at *19 (M.D. Fla. Apr. 1, 2004) (recommending *sua sponte* severance of multiple defendants in action where only connection between them was allegation they used same ISP and P2P network to conduct copyright infringement).

This Court finds that the use of the same P2P network to allegedly commit copyright infringement is, without more, insufficient for permissive joinder under Rule 20. *See Elektra Entm't Group, Inc. v. Does 1-9*, 2004 U.S. Dist. LEXIS 23560, 20-21 (D.N.Y. 2004). Additionally, this Court will sever not only the moving Defendant from this

13

action, but all other Doe defendants except Doe 1. *See BMG Music v. Does 1-203*, 2004 U.S. Dist. LEXIS 8457, at *2, *4 (E.D. Pa. Apr. 2, 2004). Therefore, this Court ORDERS all Does, except Doe No. 1, SEVERED from this action.

**IV.     Conclusion**

For the reasons set out above, the Magistrate Judge DENIES Defendant's November 21, 2007 Motion to Vacate this Court's prior Order granting expedited discovery (Doc. 8), DENIES Defendant's November 21, 2007 Motion to Quash the subpoena issued by Plaintiff upon OSU (Doc. 8), RECOMMENDS that Defendant's November 21, 2007 Motion to Dismiss for failure to state a claim (Doc. 8) be DENIED, and GRANTS Defendant's November 21, 2007 Motion to Dismiss the claim against Doe No. 9 for improper joinder (Doc. 8) and SEVERS all Does, except Doe No. 1, from this action. If plaintiffs intend to proceed against Doe defendants 2-8, they must file separate complaints against each of them. Plaintiff shall file new, separate actions against each of the severed Doe defendants within twenty (20) days and pay the requisite filing fees. Failure to timely do so will result in dismissal of plaintiffs' claims against each of the severed defendants. Pre-trial discovery in the actions may, however, be consolidated.

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. *See* 28 U.S.C. §636(b)(1)(B); Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

 

 

<u>s/ Mark R. Abel</u>
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:07-CV-298-BR

LAFACE RECORDS, LLC, et al.,           )
                                       )
                    Plaintiffs,        )
                                       )
        v.                             )               **O R D E R**
                                       )
DOES 1 - 38,                           )
                                       )
                    Defendants.        )

This matter is before the court on the motions of defendants Does 1, 18, 19, 26, 31, 33, 35, and 38 ("moving defendants") requesting that the court: (1) vacate the Order granting expedited discovery to plaintiffs; (2) dismiss plaintiffs' complaint against them pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim; (3) quash the subpoena issued by plaintiffs to non-party North Carolina State University ("NCSU"); and (4) dismiss the complaint against them pursuant to Federal Rule of Civil Procedure 20 for improper joinder. Moving defendants' motions initially stated that only Doe 31 sought to dismiss plaintiffs' claims based on improper joinder; however, moving defendants subsequently filed a motion to amend and clarified that all moving defendants seek to dismiss plaintiffs' claims based on improper joinder, along with the other grounds listed above. Plaintiffs have responded to the motions to dismiss. Accordingly, this matter is ripe for disposition.

## I. BACKGROUND

Plaintiffs are the alleged owners of the copyrights in numerous sound recordings made by artists who no longer control the copyrights at issue. (Comp. ¶ 22). On 8 August 2007 plaintiffs filed a complaint alleging copyright infringement by defendants. (Id. ¶ 1). Plaintiffs are unaware

of the true identities of defendants and know them only by the Internet Protocol ("IP") address, which was assigned to each defendant by their Internet Service Provider ("ISP").  (Id. ¶ 19).  The alleged infringement is the result of defendants downloading and distributing copyrighted music from the internet through use of an online media distribution system, a peer-to-peer ("P2P") network, without permission from plaintiffs, the copyright owners.  (Id. ¶¶ 20, 24; Plfs.' Resp. at 3).  Attached to the complaint are charts showing the IP addresses for each Doe defendant, along with the P2P network used for downloading, the date and time of the download, and a list of copyrighted recordings downloaded by artist, song title, album title, and copyright holder.  (Id. ¶ 24; Ex. A).

Because the true identities of defendants are unknown, plaintiffs filed an *ex parte* motion for expedited discovery seeking to serve a Rule 45 subpoena on NCSU, the ISP for defendants.  (Ex Parte Mot. ¶¶ 1, 3; *Ex Parte* Mem. at 2).  Through the subpoena, plaintiffs sought to learn the true names, permanent addresses, telephone numbers, e-mail addresses, and Media Access Control ("MAC") addresses for each defendant.  (*Ex Parte* Mot. ¶ 3).  By Order dated 10 August 2007, the *ex parte* motion was granted by a magistrate judge.

## II.  DISCUSSION

### A.  Motion to Dismiss for Failure to State a Claim

The moving defendants seek dismissal of plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted.  The complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  If a claim has been adequately stated in the complaint, "it may be supported by showing any set of facts consistent with the allegations in the complaint."  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1969 (2007).  However, the factual allegations in plaintiffs' complaint

"must be enough to raise a right to relief above the speculative level." Id. at 1965. In reviewing the complaint, the court must construe the facts and draw all reasonable inferences in the light most favorable to the plaintiffs. Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

The moving defendants contend that plaintiffs' complaint should be dismissed against them because it does not allege actual copyright infringement. Specifically the moving defendants assert that plaintiffs failed to allege that the Doe defendants "invited anyone to copy their music files or were aware that anyone had copied their music files[,] . . . were . . . aware that their music files could be copied by third parties[,] . . . [or had] a duty to protect their music files from copying by third parties over the Internet." (Defs.' Mem. at 5).

To establish a claim for copyright infringement, plaintiffs need only prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). The complaint alleges that plaintiffs are the owners of various copyrighted music. (Compl. ¶ 22). It further alleges the Doe defendants used a P2P network to download and distribute that copyrighted music, and includes an exhibit detailing the specific P2P network used, along with the IP address for each defendant, and the date and time specific music was downloaded. (Id. ¶ 24; Ex. A). Plaintiffs have thus sufficiently stated a claim and supporting factual basis for copyright infringement. See Arista Records, LLC v. DOES 1-27, No. Civ. 07-162-B-W, 2008 U.S. Dist. LEXIS 6241, at *5, *18-19 (D. Me. Jan. 25, 2008) (complaint survived 12(b)(6) motion dismiss where it alleged copyright infringement by downloading copyrighted music from the internet using a P2P network and used an attachment to identify each Doe defendant by IP address). The details that the moving defendants argue are fatally

3

missing from the complaint are simply unnecessary to state a claim for copyright infringement under the liberal notice pleading rules for federal courts.

## B. Motion to Dismiss for Improper Joinder

The moving defendants also argue that the court should dismiss the claims against them for improper joinder. Federal Rule of Civil Procedure 20(a)(2) allows a plaintiff to join multiple defendants in one action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise the action." To remedy improperly joined parties, the court should not dismiss the action outright, but "the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. The court may act upon motion by a party or *sua sponte*. Id.

The moving defendants argue that plaintiffs have failed to show that the copyright infringement claims against them arise out of the same transaction, occurrence, or series of transactions or occurrences. (Defs.' Mem. at 12-16). The court agrees. Plaintiffs argue that the claims asserted against the various defendants arise out of the same series of transactions because each defendant used the same ISP as well as some of the same P2P networks "to commit the exact same violation of the law in exactly the same way." (Plfs.' Resp. at 22). However, merely committing the same type of violation in the same way does not link defendants together for purposes of joinder.

In similar cases, other courts have commonly held that where there is no assertion that multiple defendants have acted in concert, joinder is improper. See BMG Music v. Does 1-4, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31, 2006) (*sua sponte*

severing multiple defendants in action where only connection between them was allegation they used same ISP to conduct copyright infringement); <u>Interscope Records v. Does 1-25</u>, No. 6:04-cv-197-Orl-22DAB, 2004 U.S. Dist. LEXIS 27782, at *19 (M.D. Fla. Apr. 1, 2004) (magistrate judge recommended *sua sponte* severance of multiple defendants in action where only connection between them was allegation they used same ISP and P2P network to conduct copyright infringement). Accordingly, this court finds that defendants' use of the same ISP and P2P networks to allegedly commit copyright infringement is, without more, insufficient for permissive joinder under Rule 20. This court will sever not only the moving defendants from this action, but all other Doe defendants except Doe 2. See <u>BMG Music v. Does 1-203</u>, No. 04-650, 2004 U.S. Dist. LEXIS 8457, at *2, *4 (E.D. Pa. Apr. 2, 2004) (upon motion for reconsideration, court upheld its *sua sponte* order of severance of all but one Doe defendant).

### III.  CONCLUSION

The moving defendants' motion to amend is GRANTED.  The moving defendants' motions to dismiss for failure to state a claim are DENIED.  Although the court also DENIES the motions to dismiss for improper joinder, all defendants except Doe 2 are SEVERED from this action upon plaintiffs' filing of new, separate actions against each of the severed Doe defendants within twenty (20) days and paying the requisite filing fees.[1]  Failure to timely do so will result in dismissal of plaintiffs' claims against each of the severed defendants.

Because all defendants except Doe 2 will be severed from this action, the subpoena served on NCSU is no longer valid as to those defendants and the court need not address the motions to dismiss to the extent based on vacating the expedited discovery Order and quashing the subpoena.

---

[1] Plaintiffs have voluntarily dismissed their claims against Does 7, 27, and 32.

5

NCSU is permitted to proceed with producing the information requested in the subpoena as to the

remaining defendant, Doe 2.  Plaintiffs shall serve a copy of this Order on counsel for NCSU.

This 27 February 2008.

W. Earl Britt
Senior U.S. District Judge

LR/DOES/MKM

NITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| ARISTA RECORDS, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Civ. No. 07-162-B-W |
| | ) | |
| DOES 1-27, | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION ON MOTIONS TO DISMISS**

A cadre of owners and licensees of certain copyrighted sound recordings,
including Arista Records, Atlantic Recording, BMG Music, Capitol Records, Elektra
Entertainment, Motown Record Company, Sony BMG Music Entertainment, Virgin
Records America and Warner Bros. Records, brought this copyright infringement action
against a collection of University of Maine students, identified to date only as Does 1-
27[1] having certain IP addresses provided by the University, for their alleged use of an
online media distribution system to unlawfully download and/or distribute various
copyrighted works. The owners and licensees (collectively referred to as "the Plaintiffs")
request in their complaint injunctive relief and statutory damages, plus reimbursement for
the costs and attorney fees required to bring this action. Nine of the Doe Defendants
have moved to dismiss the complaint (doc. nos. 10 & 18) and the Court has referred their
motions to me for a recommended decision. Based on my review of the pleadings and
legal memoranda, I recommend that the Court deny their motions.

---

[1] To date, the Plaintiffs have voluntarily dismissed their claims against four of the Doe Defendants.

**The Allegations**

The material allegations that underlie the current action are as follows:

20.  Although Plaintiffs do not know the true names of Defendants, each Defendant is alleged to have committed violations of the same law (e.g., [sic] copyright law), by committing the same acts (e.g., [sic] the downloading and distribution of copyrighted sound recordings owned by Plaintiffs), and by using the same means (e.g., [sic] a file-sharing network) that each Defendant accessed via the same ISP.  Accordingly, Plaintiffs' right to relief arises out of the same series of transactions or occurrences, and there are questions of law or fact common to all Defendants such that joinder is warranted and appropriate here.

## COUNT I

## INFRINGEMENT OF COPYRIGHTS

21.  Plaintiffs incorporate herein by this reference each and every allegation contained in each paragraph above.

22.  Plaintiffs are, and at all relevant times have been, the copyright owners or licensees of exclusive rights under United States copyright law with respect to certain copyrighted sound recordings, including, but not limited to, all of the copyrighted sound recordings on Exhibit A to this Complaint (collectively, these copyrighted sound recordings shall be identified as the "Copyrighted Recordings).  Each of the Copyrighted Recordings is the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights to each Plaintiff as specified on each page of Exhibit A.

23.  Among the exclusive rights granted to each Plaintiff under the Copyright Act are the exclusive rights to reproduce the Copyrighted Recordings and to distribute the Copyrighted Recordings to the public.

24.  Plaintiffs are informed and believe that each Defendant, without the permission or consent of Plaintiffs, has continuously used, and continues to use, an online media distribution system to download and/or distribute to the public certain of the Copyrighted Recordings.  Exhibit A identifies on a Defendant-by-Defendant basis (one Defendant per page) the IP address with the date and time of capture and a list of copyrighted recordings that each Defendant has without the permission or consent of Plaintiffs, downloaded and/or distributed to the public.  Through his or her continuous and ongoing acts of downloading and/or distributing to the public the Copyrighted Recordings, each Defendant has violated Plaintiffs' exclusive rights of reproduction and distribution.  Each Defendant's

actions constitute infringement of Plaintiffs' copyrights and/or exclusive rights under copyright.  (In addition to the sound recordings listed for each Defendant on Exhibit A, Plaintiffs are informed and believe that each Defendant has without the permission or consent of Plaintiffs, continuously downloaded and/or distributed to the public additional sound recordings owned by or exclusively licensed to Plaintiffs or Plaintiffs' affiliate record labels, and Plaintiffs believe that such acts of infringement are ongoing.  Exhibit A includes the currently-known total number of audio files being distributed by each Defendant.)

25.  Plaintiffs have placed proper notices of copyright pursuant to 17 U.S.C. § 401 on each respective album cover of each of the sound recordings identified in Exhibit A.  These notices of copyright appeared on published copies of each of the sound recordings identified in Exhibit A.  These published copies were widely available, and each of the published copies of the sound recordings identified in Exhibit A was accessible by each Defendant.

26.  Plaintiffs are informed and believe that the foregoing acts of infringement have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiffs.

* * * *

(Compl. for Copyright Infringement, Doc. No. 1.)  The Exhibit A filed by the Plaintiffs as

an attachment to their complaint does not supply any information concerning sound

recordings on a defendant-by-defendant basis.  Instead, the complaint's Exhibit A simply

lists the IP address associated with each of the Doe Defendants.  The Exhibit A to which

the complaint refers was filed on the same date as the complaint, but is identified as

Exhibit A to AO Form 121, which is a report directed to the Register of Copyrights,

informing the Register pursuant to 17 U.S.C. § 508 that a copyright action was filed with

respect to the copyrighted works.[2]  (See Doc. No. 5.)  That exhibit is a 27-page list—one

page per original Doe Defendant—that identifies a peer-to-peer network (in each case

---

[2]        The onus of preparing the report is placed on the Clerk, not on the Plaintiffs.  See 17 U.S.C. § 508.

Gnutella), a number of "total audio files"[3] (ranging from 81 to 2903, depending on the defendant) and a list of between 6 and 10 specific copyrighted works for each Doe Defendant. This exhibit is referenced in the complaint and is therefore something that the Court may consider in ruling on the 12(b)(6) motion, without converting the motion into a motion for summary judgment. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)

In conjunction with the filing of the complaint, the Plaintiffs also filed on the same date an *ex parte* motion for leave to take immediate discovery through a Rule 45 subpoena served on the University, in order to identify the Doe Defendants. (Doc. No. 4.) That motion was granted, subject to the restriction that the Plaintiffs include a court-approved notice with their subpoena and instructions that the University provide advance notice to the Doe Defendants of the existence of the subpoena and not respond to the subpoena prior to 14 days following receipt of the notice by each Doe Defendant. (Doc. No. 6.)

In support of their *ex parte* motion, the Plaintiffs submitted the Declaration of Carlos Linares, yet another "Exhibit A." (Doc. No. 4, Ex. A.) The Linares Declaration articulates how peer-to-peer file sharing works and how the Plaintiffs came to target the Doe Defendants. I have excerpted portions of the declaration for purposes of background, though I do not "incorporate" the declaration for purposes of determining whether the complaint satisfies the notice pleading requirements of the Federal Rules of Civil Procedure.

---

[3]    It is not plainly apparent what the "total audio files" number refers to, though one plausible inference is that it is the number of audio files each Doe Defendant made available to the public on his or her computer during one or more "sessions" using the Gnutella peer-to-peer file swapping program. That inference is supported by the Declaration of Carlos Linares, attached to the Plaintiffs' *ex parte* motion for leave to take discovery. (Doc. No. 4, Ex. A.)

## DECLARATION OF CARLOS LINARES
## IN SUPPORT OF *EX PARTE* MOTION FOR LEAVE
## TO TAKE IMMEDIATE DISCOVERY

\* \* \* \*

### The Internet and Music Piracy

\* \* \* \*

6.  Much of the unlawful distribution of copyrighted sound recordings over the Internet occurs via "peer-to-peer" ("P2P") file copying networks or so-called online media distribution systems.  . . .  These include KaZaA, eDonkey, iMesh, Ares, BitTorrent, DirectConnect, and Gnutella, among others.  To this day, some P2P networks continue to operate and to facilitate widespread copyright piracy.  . . . .

7.  P2P networks, at least in their most popular form, refer to computer systems or processes that enable Internet users to:  (1) make files (including audio recordings) stored on a computer available for copying by other users; (2) search for files stored on other users' computers; and (3) transfer exact copies of files from one computer to another via the Internet.  P2P networks enable users who otherwise would have no connection with, or knowledge of, each other to offer to each other for distribution and copying files off of their personal computers, to provide a sophisticated search mechanism by which users can locate these files for downloading, and to provide a means of effecting downloads.

\* \* \* \*

### The RIAA's Identification of Copyright Infringers

11.  In order to assist its members in combating copyright piracy, the RIAA retained a third-party investigator, MediaSentry, Inc. ("MediaSentry"), to conduct searches of the Internet, as well as file-copying services, for infringing copies of sound recordings whose copyrights are owned by RIAA members.  A search can be as simple as logging onto a P2P network and examining what files are being offered by others logged onto the network.  In gathering evidence of copyright infringement, MediaSentry uses the same functionalities that are built into P2P programs that any user of the software can use on the network.

12.  Users of P2P networks who distribute files over a network can be identified by using Internet Protocol ("IP") addresses because the unique IP address of the computer offering the files for distribution can be captured by another user during a search or a file transfer.  Users of P2P networks can be identified by their IP addresses because each computer or network device (such as a router) that connects to a P2P network must

have a unique IP address within the Internet to deliver files from one computer or network device to another. Two computers cannot effectively function if they are connected to the Internet with the same IP address at the same time. This is analogous to the telephone system where each location has a unique number. . . . . Each computer or network device is connected to a network that is administered by an organization like a business, ISP, college, or university, [which] can identify the P2P network user associated with the specified IP address.

13. MediaSentry finds individuals using P2P networks to share music files over the Internet. Just as any other user on the same P2P would be able to do, MediaSentry is able to detect the infringement of copyrighted works and identify the users' IP addresses because the P2P software being used by those individuals has file-sharing features enabled.

14. For each suspected infringer, MediaSentry downloads a number of the music files that the individual is offering to other users on the P2P network. Those music files for each such individual are listed in Exhibit A to the Complaint. MediaSentry assigns an identification number to each individual for which it detects copyright infringement and gathers additional evidence for each individual, such as metadata accompanying each file being disseminated that demonstrates that the user is engaged in copyright infringement. That evidence includes download data files that show for each music file the source IP address, user logs that include a complete listing of all files in the individual's share folder at the time, and additional data that track the movement of the files through the Internet.

15. After MediaSentry collects the evidence of infringement, the RIAA engages in a painstaking process to verify whether each individual was infringing. That process relies on human review of evidence supporting the allegation of infringement. For each suspected infringer, the RIAA reviews a listing of the music files that the user has offered for download by others from his or her computer in order to determine whether they appear to be copyrighted sound recordings. The RIAA also listens to the downloaded music files from these users in order to confirm that they are, indeed, illegal copies of sound recordings whose copyrights are owned by RIAA members. Exhibit A to the Complaint lists the details of these downloaded music files. . . . .

* * * *

(Linares Decl., Doc. No. 4-3.)

**Discussion**

The Doe Defendants maintain that the allegations of the complaint are deficient because they fail to set forth any plausible, non-speculative basis to infer that the Doe Defendants' mere usage of the Gnutella P2P system was unlawful.  (Mot. to Dismiss Mem. at 1-2, Doc. No. 15.)  They seek to capitalize on what they regard as a major shift in the notice pleading standard of the Federal Rules or, more particularly, the standard governing when it is appropriate for a court to infer the presence of unstated facts in order to determine whether a claim for relief has been adequately alleged for purposes of Rule 8(a) and Rule 12(b)(6).  (Id. at 3, citing Bell Atl. v. Twombly, 127 S. Ct. 1955 (2007).)  Thus, they assert:

> One year ago, there would have been no question but that the conclusory complaint filed by plaintiffs here satisfied the "short and plain statement" requirement of F.R.Civ. P. 8.  However, the Supreme Court has recently provided lower courts with a new and significant construction of that rule with its decision in *Bell Atlantic v. Twombly*[.]

(Id.)  In Twombly, the Supreme Court considered whether an action was sufficiently alleged under § 1 of the Sherman Act, which prohibits conspiracies in restraint of trade, based on factual allegations limited to parallel business conduct and a bare, conclusory allegation of conspiracy.  127 S. Ct. at 1961.  The Second Circuit had held that the pleadings were adequate to state a claim because the defendants had failed to demonstrate that there was "no set of facts" consistent with the allegations of parallel conduct that might be discovered in support of a finding of an actual agreement in restraint of trade. Id. at 1963; Twombly v. Bell Atl., 425 F.3d 99, 114 (2d Cir. 2005).  The Supreme Court reversed this determination and concluded that it was time to retire the hackneyed "no set of facts" phrase insofar as it had come to be interpreted by some courts as describing a minimum pleading standard.  Twombly, 127 S. Ct. at 1969 & n.8 (describing what the

Court regards as the real meaning of the phrase, as originally used in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).  In its place, and in place of various other verbiage developed over the years to describe what amounts to fair notice under Rule 8(a), the Court lighted upon "plausibility"[4] as the touchstone for judging inferences that must be drawn in order to credit conclusory allegations.  <u>Id.</u> at 1965, 1970, 1974.  Nothing in <u>Twombly</u> forbids lower courts from drawing inferences or accepting conclusory recitations as true for purposes of a motion to dismiss, so long as the factual content that is supplied in the complaint demonstrates the plausibility of any necessary inferences.  This is in keeping with the holding of <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506 (2002), another significant, recent opinion addressing the notice pleadings standard, in which the Supreme Court held that a plaintiff is not required to plead specific facts supporting each and every element of a prima facie discrimination claim, <u>id.</u> at 513-15, and suggested that a motion for a more definite statement is the more appropriate route for defendants to take if lack of fair notice is their real concern, <u>id.</u> at 514.  The Swierkiewicz Court flatly observed that, when it comes to judging pleadings, Rule 8(a) requires only that the plaintiff "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," <u>id.</u> at 512 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)), and that the "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims," <u>id.</u>  I now consider whether the well-pleaded facts in the complaint state a claim of copyright infringement when coupled with every reasonable (<u>i.e.</u>, plausible) inference in the Plaintiffs' favor.

---

[4]     The Court offered plausibility in contradistinction to conceivability.

8

Pursuant to the Copyright Act:  "Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device."  17 U.S.C. § 102(a).  Owners of copyrights have certain exclusive rights in the work, including the right to reproduce the copyrighted work.  Id. § 106(1).  One infringes a copyright by, among other things, violating either the owner's exclusive right to reproduce the copyrighted work or the exclusive right to distribute the work publicly.  Id. § 106(1), (3).  Either violation gives the owner of the copyright a right to sue for infringement.  17 U.S.C. § 501.  There are but two necessary elements in a claim of copyright infringement:  (1) copyright ownership in the plaintiff and (2) violation of one of the copyright owner's exclusive rights by the defendant.  Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church, 499 F.3d 32, 38 (1st Cir. 2007); 17 U.S.C. §§ 106, 501.

The Plaintiffs' complaint asserts that the Doe Defendants downloaded, reproduced and/or distributed copyrighted sound recordings owned or leased by the Plaintiffs using a file-sharing network.  (Compl. ¶¶ 20, 22, 23.)  They further allege that the Doe Defendants did so and continue to do so with members of the general public, without the permission of the Plaintiffs, giving rise to "infringement" of their "exclusive rights of reproduction and distribution."  (Id. ¶ 24.)  They incorporate by reference a list of additional allegations that the Doe Defendants utilized the Gnutella file-swapping program to make available for distribution between 81 and 2903 songs, including at least six songs per Doe Defendant that are subject to the Plaintiffs' copyright interests.  (Id., citing "Exhibit A.")

The Doe Defendants argue that the Plaintiffs have failed to allege specific facts that, if proven, would tend to establish that the alleged distribution or reproduction was infringing. Apparently recognizing that the allegations of reproduction and distribution of the Plaintiffs' copyrighted song recordings are *factual* allegations that the Court must take as true for purposes of a motion to dismiss, the argument is that an objective person reviewing the complaint and the incorporated exhibit cannot rule out the possibility that the alleged distribution and reproduction was somehow permitted or otherwise lawful, since no facts are alleged that would tend to disprove any lawful use. (Mot. to Dismiss at 5-6.) To be sure, it is conceivable that the Doe Defendants only used the Gnutella P2P software to download copyrighted song recordings that they already owned or to distribute song recordings exclusively to people who already owned them in the CD format. Nevertheless, it is a perfectly plausible inference that the alleged reproduction and distribution of the Plaintiffs' copyrighted song recordings over the peer-to-peer network constituted infringement. Moreover, inferences aside, it is not the Plaintiffs' pleading burden to set forth allegations that might overcome an affirmative defense, only to set forth enough factual detail to generate a plausible claim that their exclusive rights of reproduction and distribution were violated by the Doe Defendants. See Napster, 239 F.3d 1004, 1014 (9th Cir. 2001) (characterizing "sampling, where users make temporary copies of a work before purchasing [and] space-shifting, where users access a sound recording . . . that they already own in audio CD format," as fair use affirmative defenses).

The Plaintiffs vociferously reject this kind of ordinary inferential reasoning, contending that public policy demands more from the Plaintiffs in light of their market

power, the failure of the Plaintiffs to spin out the facts particular to each individual defendant, the fact that potential statutory damages far exceed the actual harm caused by the alleged conduct, and the Plaintiffs' demonstrated tactic of using litigation like this solely as a discovery mechanism, without actually intending to pursue their claims to judgment. The Doe Defendants ask the Court to do in this case what the Supreme Court did in Twombly because, they say, the Plaintiffs will simply use the *in terrorem* effect of statutory damages to force a settlement and, therefore, the complaint should be subjected to more rigorous vetting. (Mot. to Dismiss at 3-6.) Simply stated, I am not persuaded that Twombly ushered in a new era for Rule 12(b)(6) contests in which federal courts are expected to adjust the pleading standard depending on an assessment of the social value of a particular litigation. Even assuming that that is what the Supreme Court did in Twombly, it does not strike me as the sort of exercise a lower court should engage in on a case-by-case basis. Instead, the Court should simply follow the core holdings of both Twombly and Swierkiewicz and determine whether a plausible claim for relief is set forth in the complaint. When that standard is applied in this case, it is apparent that the Plaintiffs have set forth sufficient facts to overcome the motion.[5]

---

[5]    I share the Doe Defendants' concern over the absence of individualized allegations, but for a different reason. My concern has to do with the rules of joinder, see Rule 20(a), and whether it is appropriate for the Plaintiffs to join claims against disparate defendants concerning disparate (albeit similar) conduct, even if only for the purpose of gaining the authority to serve subpoenas to obtain the defendants' names and contact information. I assume they have done so in order to limit their filing fees and make their discovery work more manageable, but I am not convinced that it is proper. See, e.g., DirecTV, Inc. v. Adrian, 2004 U.S. Dist. LEXIS 8922, 2004 WL 1146122 (N.D. Ill. May 17, 2004) (involving claims that defendants separately pirated satellite TV services, without any allegation of concerted action, concluding that joinder was improper, and severing all but the first named defendant from the action). In particular, paragraph 20 of the complaint alleges that the claims against all defendants arise from the "same series of transactions or occurrences" because the Doe Defendants have the same ISP (the University of Maine) and all engaged in file-sharing over the Internet using that ISP. The complaint wants, however, any allegation of concerted conduct. The allegation that all of the claims arise from the same series of transactions or occurrences because all of the defendants used the same ISP sounds good, but makes little sense when one appreciates that having a common ISP says nothing about whether the use of that service by two or more people amounts to the *same* transaction or occurrence. Rule 11(b)(3) requires

## Conclusion

I **RECOMMEND** that the Court **DENY** the Doe Defendants' motions to dismiss

(doc. nos. 10 & 18).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

---

that a representation in a pleading have evidentiary support and one wonders if the Plaintiffs are intentionally flouting that requirement in order to make their discovery efforts more convenient or to avoid paying the proper filing fees.  In my view, the Court would be well within its power to direct the Plaintiffs to show cause why they have not violated Rule 11(b) with their allegations respecting joinder.  Separately, the Court may sever defendants *sua sponte*, pursuant to Rule 21, although dismissal of the action is not authorized.  I appreciate that increased costs may redound to the defendants' detriment eventually, but it is difficult to ignore the kind of gamesmanship that is going on here with respect to joinder.

Suppose, instead of university students, the record companies chose to target all individuals within the District of Maine who had used these P2P services and had TimeWarner Cable for their ISP.  Would all those individuals be properly joined in a single complaint?  I think the Plaintiffs know the answer to that question because on May 5, 2007, many of these same plaintiffs filed a very similar lawsuit, Atlantic Recording Corp., *et al.* v. Does 1-22, 1:07-cv-057-JAW.  A procedure similar to the one used in this case was adopted in that case, but no motions to dismiss or motions to quash were filed and presumably the plaintiffs obtained the discovery they sought.  The case was voluntarily dismissed on July 16, 2007.  Following that dismissal the same counsel filed at least three separate cases in this court:  Atlantic Recording Corporation, *et al.* v. Anna Lenentine, 1:07-cv-133-JAW, on September 4, 2007 (still pending); Capitol Records Inc. v. Cara Laude, 2:07-cv-154-GZS, on September 4, 2007 (settled and dismissed on January 22, 2008); and Atlantic Recording Corp. v. Christopher Leavitt, 2:07-cv-156-DBH, on September 4, 2007 (voluntarily dismissed with prejudice on October 16, 2007).  The relevant allegations in the respective complaints simply state that the defendants were "identified as the individual[s] responsible for that IP address at that date and hour" without reference to how the identification was made.  However, there is certainly a "plausible inference" that the identifications were made as a result of the May lawsuit.  It is curious that no attempt was made to join these cases as arising from the same transaction or occurrence if my plausible inference is accurate.  I think no such attempt was made because it is apparent that the cases would not be properly joined.  These plaintiffs have devised a clever scheme to obtain court-authorized discovery prior to the service of complaints, but it troubles me that they do so with impunity and at the expense of the requirements of Rule 11(b)(3)  because they have no good faith evidentiary basis to believe the cases should be joined.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

January 25, 2008

UNITED STATES DISTRICT COURT
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BMG MUSIC, a New York general partnership;
VIRGIN RECORDS AMERICA, INC., a California
corporation; FONOVISA, INC., a California
corporation; WARNER BROS. RECORDS, INC., a
Delaware corporation; ARISTA RECORDS LLC, a
Delaware limited liability company; UMG
RECORDINGS, INC., a Delaware corporation;
ELEKTRA ENTERTAINMENT GROUP, INC., a
Delaware corporation; CAPITOL RECORDS, INC., a
Delaware corporation; and SONY BMG MUSIC
ENTERTAINMENT, a Delaware general partnership,

        Plaintiffs,

   v.

DOES 1–4,

        Defendants.

_____/

No. 3:06-cv-01579-MHP

**MEMORANDUM & ORDER**
**Re: Motion for Administrative Relief**
**Pursuant to Local Rule 7-11(a) for**
**Leave to Take Immediate Discovery**

     Several record companies brought this action alleging copyright infringement and seeking

damages and injunctive relief under 17 U.S.C. section 101 et seq. Now before the court is plaintiffs'

motion for leave to take immediate discovery.

BACKGROUND[1]

     On February 28, 2006 several major record companies—namely BMG Music; Virgin

Records America, Inc.; Fonovisa, Inc.; Warner Bros. Records, Inc.; Arista Records LLC; UMG

Recordings, Inc.; Elektra Entertainment Group, Inc.; Capitol Records, Inc. and Sony BMG Music

Entertainment (collectively "plaintiffs")—filed a complaint for copyright infringement under 17

U.S.C. section 101 against four "John Doe" defendants ("defendants"). Plaintiffs assert that they

UNITED STATES DISTRICT COURT
For the Northern District of California

1   have copyright ownership and valid Certificates of Copyright Registration issued by the Register of

2   Copyrights for all of the sound recordings that defendants allegedly infringed.  Compl. ¶ 15.

3   Plaintiffs allege that defendants engaged in copyright infringement through acts including: using an

4   online media distribution system to download copyrighted recordings, distributing copyrighted

5   recordings to the public, and making copyrighted recordings available to others for distribution.  Id.

6   ¶ 17.

7          Plaintiffs have identified defendants by a unique Internet Protocol ("IP") address assigned to

8   each defendant according to the date and time of defendant's allegedly infringing activity.  Compl. ¶

9   13, Exh. A.  Plaintiffs have determined that Covad Communications is defendants' internet service

10   provider ("ISP").  Whitehead Dec. ¶¶ 12, 16.  However, plaintiffs have not obtained defendants'

11   names or contact information.  Id. ¶ 16.  Consequently, plaintiffs filed the instant motion for

12   expedited discovery, requesting permission to serve subpoenas on Covad pursuant to Federal Rules

13   of Civil Procedure 45 to discover defendants' identities.  Pls.' Mot. For Administrative Relief

14   Pursuant to Local Rule 7-11(a) for Leave to Take Immediate Disc. (hereinafter "Mot.") at 2.

15   Plaintiffs claim Covad can use its subscriber activity log files to identify the name and address of

16   each defendant.  Id.

17

18   DISCUSSION

19   I.     Prima Facie Showing of Copyright Infringement

20          As a preliminary matter, before the court will consider plaintiffs' motion, plaintiffs must

21   make a prima facie showing of copyright ownership of the sound recordings they allege defendants

22   infringed.  Previous cases that have evaluated subpoenas seeking information from ISPs regarding

23   Doe defendants have required a concrete showing of a prima facie claim of actionable harm.  See

24   e.g., Dendrite Int'l Inc. v. Doe, 775 A.2d 756, 760 (N.J. Super. Ct. App. Div. 2001); In re Subpoena

25   Duces Tecum to Am. Online, Inc., 52 Vir. Ca. 26, 37 (Va. Cir. Ct. 2000), rev'd on other grounds,

26   Am. Online, Inc. v. Anonymous Publicly Traded Co., 542 S.E.2d 377 (Va. 2001); Columbia Ins. Co.

27   v. Seescandy.Com, 185 F.R.D. 573, 580 (N.D. Cal. 1999) (Jensen, J.).  Such a showing requires:

28

2

UNITED STATES DISTRICT COURT
For the Northern District of California

1  "(1) ownership of a valid copyright and (2) copying of constituent elements of the work that are

2  original." Arden v. Columbia Pictures Indus., Inc., 908 F. Supp. 1248, 1257 (S.D.N.Y. 1995)

3  (quoting Feist Publ'ns v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). Plaintiffs have failed to

4  provide evidence of valid copyright ownership of the sound recordings they allege defendants

5  infringed. As set forth below, the court finds that plaintiffs must submit a valid Certificate of

6  Copyright Registration for each of the sound recordings that plaintiffs allege defendants have

7  infringed.

8

9  II.    Joinder of Defendants

10        Federal Rules of Civil Procedure 20 states in relevant part that:

11        [a]ll persons . . . may be joined in one action as defendants if there is asserted against
          them jointly, severally, or in the alternative, any right to relief in respect of or arising
12        out of the same transaction, occurrence, or series of transactions or occurrences and if
          any question of law or fact common to all defendants will arise in the action.
13

14  Fed. R. Civ. P. 20(a). Under Rule 21, "[p]arties may be dropped or added by order of the court . . .

15  of its own initiative at any stage of the action and on such terms as are just." Alternatively, "[a]ny

16  claim against a party may be severed and proceeded with separately." Id.

17        Plaintiffs have not alleged that defendants' copyright infringement: 1) arose out of the same

18  transaction or occurrence and 2) concern an issue of law or fact common to all defendants.

19  Indeed on the face of the complaint, it appears that defendants, at different times and dates, have

20  engaged in separate and distinct acts of downloading or disseminating the sound recordings.

21  Compl., Exh. A. The only connection between defendants noted by plaintiffs' papers is the fact that

22  defendants allegedly used the same ISP, Covad Communications, to conduct the infringing acts.

23  Mot. at 2. However, absent any allegation that these individuals acted in concert, there is no basis

24  for joinder.

25        Numerous federal courts have found that joinder is improper when there is no allegation that

26  multiple defendants acted in concert. See Twentieth Century Fox Film Corp. V. Does 1–12, No. C

27  04-04862 WHA (N.D. Cal. Nov. 16, 2004) (Alsup, J.) (severing multiple Doe defendants in a

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1  copyright infringement case where although defendants used the same ISP to allegedly infringe

2  motion picture recordings, there was no allegation that the individuals acted in concert); In the

3  Matter of DIRECTV, INC. Cases pending in the Northern District of California, No. C-02-5912-JW

4  (N.D. Cal. July 26, 2004) (Ware, J.) (similar finding in a case involving encrypted satellite

5  communications); Interscope Records v. Does 1–25, Case No. 6:04-cv-197-Orl-22DAB (M.D. Fla.

6  April 27, 2004) (similar finding in a case involving sound recordings; BMG Music v. Does 1–203,

7  2004 U.S. Dist. LEXIS 8457, at *2–3 (E.D. Pa. Apr. 2, 2004) (affirming earlier *sua sponte*

8  determination of severance in sound recording case); cf., DIRECTV, Inc. v. Adrian, 2004 WL

9  1146122, at *3 (N.D. Ill. May 18, 2004) (severing multiple defendants who allegedly possessed and

10 used devices and equipment to illegally intercept plaintiff's satellite communications); DIRECTV,

11 Inc. v. Boggess, 300 F. Supp. 2d 444, 449 (S.D. W. Va. Feb. 6, 2004) (same); DIRECTV v. Lewis,

12 2004 WL 941805, at *7 (W.D.N.Y. Jan. 6, 2004) (same).

13       Since defendants' actions do not arise out of the same transaction or occurrence, nor are they

14 a part of a series of connected transactions or occurrences, the court finds that defendants are

15 improperly joined. The claims against the four defendants are unique and "will require separate

16 trials as they may involve separate witnesses, different evidence, and different legal theories and

17 defenses, which could lead to confusion of the jury." BMG Music, et al., v. Does 1–203, 2004 U.S.

18 Dist. LEXIS 27779, at *2 (E.D. Penn. 2004) (citing United States v. 1071.08 Acres of Land, 564

19 F.2d 1350 (9th Cir. 1977)). Consequently, the court severs defendants pursuant to Federal Rules of

20 Civil Procedure 20(a) and 21.

21       For the reasons set forth above, the court finds that:

22       (1) This case is deemed filed only as to Doe defendant #1. Plaintiffs shall amend their

23           complaint to name as plaintiffs only those copyright holders that have claims against Doe

24           defendant #1 and file a copy of a valid Certificate of Copyright Registration with the court

25           for each of the sound recordings plaintiffs allege Doe defendant #1 infringed within thirty

26           (30) days of the date of this Order.

27

28
                                                    4

1    (2)  Doe defendants #2–4 are SEVERED and DISMISSED from the action without

2    prejudice.  Plaintiffs can refile separate complaints against Doe defendants #2–4 within thirty

3    (30) days of the date of this Order, receiving a new case number and paying the filing fee for

4    each.  If plaintiffs refile within thirty (30) days of the date of this Order, such action shall be

5    deemed a continuation of the original action for purposes of the statute of limitations.

6    Plaintiffs shall attach relevant Certificate(s) of Copyright Registration for each of the sound

7    recordings plaintiffs allege the pertinent Doe defendant infringed.

8    (3)  Where there is no demonstrated basis for joinder, plaintiffs are ordered to file any future

9    claims in this District against individual Doe defendants as separate actions and attach

10   relevant Certificate(s) of Copyright Registration for each of the sound recordings plaintiffs

11   allege Doe defendant infringed.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1

2

3 <u>CONCLUSION</u>

4      For the reasons stated above, plaintiffs' motion is DENIED without prejudice.

5

6 IT IS SO ORDERED.

7

8 Dated: July 31, 2006

9                                      MARILYN HALL PATEL
District Judge

10                                        United States District Court
Northern District of California

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

6

1

2

3   <u>ENDNOTES</u>

4   1.  Unless otherwise noted, background facts are taken from plaintiffs' complaint.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BMG MUSIC, *et al.* | : | CIVIL ACTION |
| | : | |
| Plaintiffs | : | NO.  04-650 |
| | : | |
| v. | : | |
| | : | |
| DOES 1-203, | : | |
| | : | |
| Defendants. | : | |

## O R D E R

AND NOW, this   day of April, 2004, upon consideration
of Plaintiffs' Motion for Reconsideration (Doc. 9), it is hereby
ORDERED that said Motion is DENIED in part and GRANTED in part.
Part 5 of the Court's Order of March 5, 2004, is VACATED.
Plaintiffs may, in due course and with all reasonable speed, file
complaints and submit filing fees for those Defendants against
whom they wish to proceed.

This Court has ruled, *sua sponte*, that two-hundred and
two Defendants in the above-captioned case have been improperly
joined pursuant to Fed. R. Civ. Pro. 20 and 21.  Plaintiffs have
asked that the Court vacate its earlier Order and refrain from
ruling on the issue of joinder until after Plaintiffs are able to
ascertain Defendants' identities through discovery.  Defendants'
identities are believed to be known by Comcast, a third-party
that provides internet access to the Internet Protocol (IP)
address range utilized by the Defendants.  Although it would be
convenient and economical (for Plaintiffs) to have this Court

1

preside over Plaintiffs' expedited discovery request, the Court simply cannot overcome its finding that the Defendants are not properly joined parties.[1]  In light of the Court's continuing conviction that joinder is improper, deferring consideration of the joinder issue is inappropriate despite the fact that it would reduce costs for Plaintiffs and mitigate the risk of disparate treatment at the hands of the learned Judges of this District (a risk, the Court notes, that is present in every case that involves developing areas of law).

This Court's Order of March 5, 2004, was entered after inspection of Plaintiffs' Complaint revealed that Plaintiffs are attempting to bring over two-hundred factually distinct actions in one lawsuit.  Each claim involves different property, facts, and defenses.  John Doe 104, for example, is alleged to have infringed nine works held by five Plaintiffs.  John Doe 113 is alleged to have infringed ten works owned by a different (sometimes overlapping) group of Plaintiffs, with only one copyright identical to John Doe 104 ("Guilty Conscience," by the popular rap lyricist Eminem).  John Doe 199, meanwhile, is alleged to have infringed seven works, none of them the same as John Doe 58.  Plaintiffs' Complaint, Exh. A.  In other words, in

---

[1]Even after new complaints are filed, this Court has no mechanism at its immediate disposal to retain authority over all of the cases during discovery; under this District's local rules of civil procedure, the cases against the individual Defendants will not meet the requirements of relatedness.  Loc. R. Civ. Pro. 40.1.

addition to the individual acts of infringement encompassing separate transactions and occurrences, the actual property at issue is different for each Defendant.  Each Defendant will also likely have a different defense.  Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works.  John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed.  Given this panoply of facts, law, and defenses, the Court does not see any reason to vacate its March 5, 2004, Order.  Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) of Defendants.  Joinder is improper. Defendants 2 through 203 shall be severed.

        AND IT IS SO ORDERED.


                                    _____
                                    Clarence C. Newcomer, S.J.

FILED

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
ORLANDO DIVISION

'04 APR 27 PH 4:31

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

INTERSCOPE RECORDS; CAROLINE
RECORDS, INC.; CAPITOL RECORDS,
INC.; MAVERICK RECORDING
COMPANY; WARNER BROTHERS
RECORDS, INC.; LONDON-SIRE
RECORDS, INC.; UMG RECORDINGS,
INC.; SONY MUSIC ENTERTAINMENT,
INC.; MOTOWN RECORD COMPANY,
L.P.; ARISTA RECORDS, INC.;
FONOVISA, INC.; BMG MUSIC;
ATLANTIC RECORDING
CORPORATION; ELEKTRA
ENTERTAINMENT GROUP, INC.;
PRIORITY RECORDS LLC; and VIRGIN
RECORDS AMERICA, INC.,

Plaintiffs,

-vs-                                    Case No. 6:04-cv-197-Orl-22DAB

DOES 1–25,

Defendants.

---

### ORDER

This cause comes before the Court for consideration of United States Magistrate

Judge David A. Baker's April 1, 2004 Report and Recommendation (R&R) (Doc. No. 11),

recommending that the undersigned judge sever all claims raised herein except those raised

by the first Plaintiff (Interscope Records) against the first Defendant (Doe 1). The Plaintiffs

filed objections (Doc. No. 12 ) on April 15, 2004.

13

Having reviewed the R&R (Doc. No. 11), the Plaintiffs' objections thereto (Doc. No. 12), and all relevant papers in the record, this Court **ADOPTS** Judge Baker's well reasoned memorandum opinion (Doc. No. 11), and **OVERRULES** the Plaintiffs' Objections (Doc. No. 12) thereto. On the face of the record, it is clear that permissive joinder is improper. None of the Defendants disseminated the same copyrighted material or songs belonging to the same set of Plaintiffs. The only similarity is that the Defendants apparently used the Fast Track network to make the songs available. Accordingly, each case presents a unique set of facts and circumstances.

Based on the foregoing, it is **ORDERED** that:

1.    The April 1, 2004 Report and Recommendation (Doc. No. 11) issued by United States Magistrate Judge David A. Baker is **APPROVED** and **ADOPTED**.

2.    All claims except those raised by the Plaintiffs against the first Defendant (Doe 1) shall be **SEVERED**.

3.    The Plaintiffs claims against the remaining twenty-four (24) Defendants shall be **DISMISSED** unless within eleven (11) days from the date of this Order, the Plaintiffs initiate twenty-four (24) separate new actions.

4.    If the Plaintiffs elect to initiate twenty-four (24) separate new actions, then the Plaintiffs shall present to the Clerk of Court at one time: (1) a JS-44 civil cover sheet for each new case; (2) the appropriate filing fee for each new case; and (3) a separate Complaint for each individual Doe Defendant.

-2-

5.      In accordance with Rule 1.04(a) of the Local Rules of the Middle District of

Florida, the Clerk shall directly assign each of the derivative cases filed by the Plaintiffs to

the undersigned judge and to Magistrate Judge David A. Baker.

6.      The Court reserves ruling on the issue of whether each individual Plaintiff

should be severed to proceed individually against each individual Defendant until responsive

pleadings are filed.

7.      On or before Friday, May 28, 2004, the Plaintiffs may file a motion for

individualized pre-service discovery in each of their respective cases.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida this _27th_ day of April,

2004.


ANNE C. CONWAY
United States District Judge


✓Copies furnished to:

Counsel of Record
Unrepresented Parties
Administrative Law Clerk
United States Magistrate Judge David A. Baker


-3-

F I L E   C O P Y

Printed: 04/28/2004


.ce sent to:

    ___    Karen L. Stetson, Esq.
           Broad & Cassel
           Miami Center, Suite 3000
           201 S. Biscayne Blvd.
           Miami, FL  33131

           6:04-cv-00197    rdo

    ___    Randall C. Marshall, Esq.
           American Civil Liberties Union
           Foundation of Florida, Inc.
           4500 Biscayne Blvd., Suite 340
           Miami, FL  33137

           6:04-cv-00197    rdo

# FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

INTERSCOPE RECORDS; CAROLINE
RECORDS, INC.; CAPITOL RECORDS,
INC.; MAVERICK RECORDING
COMPANY; WARNER BROTHERS
RECORDS, INC.; LONDON-SIRE
RECORDS, INC.; UMG RECORDINGS,
INC.; SONY MUSIC ENTERTAINMENT,
INC.; MOTOWN RECORD COMPANY,
L.P.; ARISTA RECORDS, INC.;
FONOVISA, INC.; BMG MUSIC;
ATLANTIC RECORDING
CORPORATION; ELEKTRA
ENTERTAINMENT GROUP, INC.;
PRIORITY RECORDS LLC; and VIRGIN
RECORDS AMERICA, INC.,

Plaintiffs,

-vs-                                    Case No.  6:04-cv-197-Orl-22DAB

DOES 1--25,

Defendants.

---

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on Plaintiffs' Response to this

Court's Order to Show Cause entered on March 5, 2004. Doc. No. 7. Plaintiffs in this case are sixteen

record companies who own or license copyrights in popular sound recordings in the United States.

Plaintiffs have filed suit against twenty-five unidentified "John Doe" Defendants for copyright

infringement. Doc. No. 1. On February 17, 2004, Plaintiffs sought leave to serve immediate

11

discovery on the third-party Internet Service Provider Bright House Networks to determine the true

identities of the "John Doe" Defendants, asserting that venue and personal jurisdiction in this District

are proper. Doc. No. 1 at 2.

On March 5, 2004, this Court denied without prejudice Plaintiffs' Motion and ordered

Plaintiffs to show cause why this case should not be dismissed for improper joinder of Plaintiffs and

Defendants, for an inadequate showing that this Court has personal jurisdiction over the Defendants,

and for improper venue. Plaintiffs contend in their Response (Doc. No. 8) that the Court should

reserve judgment on these issues until such time as all Defendants have been identified and are before

the Court.

According to Plaintiffs, the unnamed Defendants in the case are individuals who are active

participants in allegedly disseminating Plaintiffs' copyrighted works unlawfully over a peer-to-peer

network[1]. Doc. No. 8 at 2. Defendants allegedly offered from their computers copyrighted sound

recordings via the "Fast Track Network," the largest peer-to-peer network. *Id.* Plaintiffs allege

Defendants' dissemination and copying of copyrighted material violates the copyright laws. *Id.*

Plaintiffs discovered the Internet Protocol ("IP") address[2] from which each Defendant was allegedly

making available Plaintiffs' copyrighted works, but could not discover the name, address, or any other

contact information for each of the Defendants. Plaintiffs filed a Motion for Leave to Take Immediate

Discovery seeking to obtain the identifying information for each Doe Defendant from Bright House

---

[1] A peer-to-peer network is an online media distribution system that allows users to transform their computers into an interactive Internet site, disseminating files for other users to copy. Doc. No. 8 at 2. When using a peer-to-peer network, participants typically use user names, and not their true names. Doc. No. 3 at 2 n.1.

[2] IP addresses are 10-digit numbers allotted in blocks to Internet Service Providers. The Internet Service Providers have complete control over the assignment of IP addresses to subscribers; there is no requirement that IP addresses be assigned according to where a subscriber lives.

Networks, the "Internet Service Provider with the majority of its subscribers located in Central
Florida." Doc. No. 8 at 3. On March 5, 2004, the Court ordered Plaintiffs to show cause why this
case should not be dismissed for improper joinder and lack of personal jurisdiction, and for improper
venue. Plaintiffs' Motion was denied without prejudice to renewal after consideration of Plaintiffs'
response to the Order to Show Cause. Doc. No. 7.

In their Response to the Court's Order to Show Cause[3], Plaintiffs contend that it is premature
to raise the issues of improper joinder, personal jurisdiction, and venue before the Defendants are
identified. Plaintiffs contend that the court must wait until the Defendants are identified and notified
because personal jurisdiction and venue are defenses that depend on facts specific to each Defendant
and may be waived; the Court cannot complete an analysis of Defendants contacts with the forum until
Defendants are identified. The Court agrees that the issues of personal jurisdiction and venue can be
addressed after the Defendants are identified.

However, the Court disagrees with Plaintiffs that it must also wait to determine whether
severance will prejudice any party or result in undue delay of the litigation. The Court disagrees
because the various Plaintiffs' claims against various Defendants are not logically related to each
other.

*Federal Rule of Civil Procedure 20*

Plaintiffs rely on Civil Rule of Procedure 20, which allows permissive joinder of claims by
plaintiffs or against defendants if the claims "aris[e] out of the same transaction, occurrences, or series

---

[3] In violation of Local Rule 1.05(d), the Response was not signed by Plaintiffs' counsel Karen Stetson, whose
name was typed as counsel below the signature line, but by "K. Dowd," who is not listed with a typed name or Florida Bar
number within the signature block. *See* United States District Court for the Middle District of Florida, Local Rule 1.05(d)
("All pleadings, motions, briefs, applications and other papers tendered by counsel for filing shall be signed personally by
counsel as required by Rule 11, Fed. R. Civ. P. Immediately under every signature line, additional information shall be
given as indicated . . .Typed Name of Counsel, Florida Bar Identification Number.")

of transactions or occurrences and if any question of law or fact common to all these persons will arise

in the action." Fed. R. Civ. P. 20(a)[4]. A party seeking joinder of claimants under Rule 20 must

establish two prerequisites: (1) a right to relief arising out of the same transaction or occurrence, or

series of transactions or occurrences, and (2) some question of law or fact common to all persons

seeking to be joined. *Alexander v. Fulton County,* 207 F.3d 1303, 1323 (11th Cir. 2000). The central

purpose of Rule 20 is to promote trial convenience and expedite the resolution of disputes, thereby

eliminating unnecessary lawsuits. *Id.* The purpose of the Rule is to entertain "the broadest possible

scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is

strongly encouraged." *United Mine Workers v. Gibbs,* 383 U.S. 715, 724 (1966). Although the

preconditions for permissive joinder are construed generously to permit the broadest scope of action

commensurate with traditional notions of justice and fair play, the court possesses equally broad

discretion to sever parties based on misjoinder. *See Alexander,* 207 F.3d at 1323. Rule 20(b) and

Rule 42(b) vest in the district court the discretion to order separate trials or make such other orders

as will prevent delay or prejudice. *Id.* "All logically related events entitling a person to institute a

legal action against another generally are regarded as comprising a transaction or occurrence." *Id.*

The determination of whether the situation constitutes the same transaction or occurrence for purposes

of Rule 20 is determined on a case by case basis. *Mosley v. General Motors Corp.*, 497 F.2d 1330,

1333 (8th Cir. 1974).

   The transactional test requires that, to be joined, parties must assert rights, or have rights

---

[4]Federal Rule of Civil Procedure 20(a) states in pertinent part:

All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the
alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or
occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant
need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of
the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective
liabilities. Fed.R.Civ.P. 20(a).

asserted against them, that arise from related activities – a transaction or an occurrence or a series of such. "In ascertaining whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, a case by case approach is generally pursued. No hard and fast rules have been established under the rule." *Id.* at 1333. Courts look at each case individually to determine whether the claims are logically related, thereby allowing "all reasonably related claims for relief by or against different parties to be tried in a single proceeding." 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE 2D § 1653. Here, the record indicates that the parties and claims are not reasonably related or properly joined.

*Plaintiffs and Defendants Are Improperly Joined*

Plaintiffs contend that the Defendants "have participated in a common scheme or pattern of behavior," via the downloading and dissemination of Plaintiffs' sound recordings using the same network, "without which no Defendant would have been able to commit much of the infringing activity" that underlies Plaintiffs' Complaint. If Plaintiffs were not joined in a single lawsuit, they argue, each of the sixteen Plaintiffs would have to file separately against the 25 separate Defendants, which would result in 425 separate lawsuits.

The twenty-five Defendants' interactions with the sixteen different Plaintiffs fail to conform to the standards established by Federal Rule of Civil Procedure 20 because they do not arise out of the same transaction, occurrence, or series of transactions or occurrences. The record is bereft of any allegation that the twenty-five Defendants are jointly or severally liable to the sixteen Plaintiffs other than the Defendants use the Fast Track peer-to-peer network. Thus, Plaintiffs' claims against the Defendants must have arisen from the same transaction or occurrence to satisfy the permissive joinder preconditions.

Plaintiffs' Response to the Order to Show Cause indicates that the twenty-five Defendants use the Fast Track peer-to-peer network to offer music to other users of the system. Plaintiffs fail to show how or which of the Defendants have actually downloaded Plaintiffs' copyrighted songs from another Defendant (which could conceivably link such Defendants) as opposed to any other users of the systems. *See* Doc. No. 4 ¶ 13 ("offering files for download on various peer-to-peer networks") & ¶ 16 ("RIAA was . . . able to confirm files of each Defendant were illegal copies made available")

Beyond the circumstances that the Defendants used the Fast Track peer-to-peer network and that the Defendants access the internet through Bright House, no other facts connect the Defendants. Fast Track is the most popular peer-to-peer network with typically more than 3 million users online, compared with a million or fewer for the nearest competitors. Konstantinos Karagiannis, "Spyware-Free P2P—For Free," PC MAGAZINE, March 2, 2004. More than two million subscribers access the Internet through Bright House Networks. *See* Doc. No. 8 at 11.

None of the Defendants disseminated the same copyrighted material or songs belonging to the same set of Plaintiffs. *See generally* Doc. 1, Ex. A. For example, based on the "sample" of illegally disseminated material asserted in Plaintiffs' Complaint[5], Doe 1 made available for download eight songs owned by six different Plaintiffs and Doe 2 made available for download a different set of eight songs by a different set of six Plaintiffs. *See id.* The twenty-three other Defendants offered for download a unique set of copyrighted songs owned by an unique set of owner-Plaintiffs. *See id.* Viewing this scenario as satisfying the same transaction or occurrence standard effectively nullifies that test. When the meaning of a rule or statute is clear and unambiguous it must be given effect. Federal Rule of Civil Procedure 20 refers to the *same* transaction or occurrence not to *similar*

---

[5]According to Plaintiffs, each Defendant has offered hundreds or thousands of copyrighted sound recordings unlawfully on peer-to-peer networks. Doc. No. 8, Ex. A ¶ 5.

transactions or occurrences. Due to the lack of an uniformity between the Defendants, and the absence of any evidence attesting to joint action other than Defendants' use of "Fast Track", and the lack of any connective nexus among the Defendants, Plaintiffs have not satisfied the preconditions for permissive joinder set forth in Federal Rule of Civil Procedure 20.

Plaintiffs cite cases in support of their position, but those cases are readily distinguishable. In *Alexander v. Fulton County*, the Eleventh Circuit affirmed the joinder of the claims of eighteen white employees of the sheriff's department where all of the plaintiffs' claims stemmed from the same core allegation that they were subject to a *systemic* pattern or practice of race-based discrimination (against white law enforcement officers) by the same decision-maker in the same department during the same short time frame. 207 F.3d 1303, 1323 (11th Cir. 2000). The other case cited by Plaintiffs is equally inapposite. In *Moore v. Comfed Savings Bank*, the Eleventh Circuit held that joinder was proper for a class comprised of Georgia residents who secured loans backed by mortgages on Georgia land from the Land Bank. The Eleventh Circuit also affirmed joinder of the class of defendants who had purchased the Land Bank loan paper on the mortgages on the secondary market and the promissory notes and settlement papers signed by the borrowers were similar to each other. 908 F.2d 834, 836 (11th Cir. 1990).

Much more similar to the facts in this case are those cases in which severance was ordered on a finding that the parties and claims were misjoined because they held claims that superficially appeared to be related, but were actually unrelated. Directly on point is the case of *Bridgeport Music, Inc. v. 11C Music*, in which several plaintiff record companies brought suit against various music companies who "sampled" copyrighted music, alleging 477 claims of copyright infringement. 202 F.R.D. 229, 231 (M.D. Tenn. 2001). The court severed the claims against the various defendants,

finding that the songs giving rise to the counts in the plaintiffs' complaint and the activities leading to the production and distribution of the "sampled" songs were not a series of transactions or occurrences. Each song and the alleged sampling represented a discrete occurrence. *Id.* at 232. "The fact that certain defendants were involved in the production, publishing, and distribution of more than one allegedly offending song did not, in itself, cause the songs to be related occurrences in the manner contemplated by Rule 20(a)." *Id.*; *Rappoport v. Steven Spielberg, Inc.*, 16 F.Supp.2d 481, 496-97 (D.N.J. 1998) (severing claims against several defendants where they arose from separate and distinct acts of infringement by defendants involving separate and distinct ideas for movies or television series).

The court in *Bridgeport* rejected the identical argument Plaintiffs assert in this case, that the infringement counts are properly joined because the various Plaintiffs have suffered the same harm from copyright infringement in each of 425 instances. *Id.* "According to this logic, a copyright plaintiff could join as defendants any otherwise unrelated parties who independently copy material owned by a [single] plaintiff." That is precisely the situation at hand. Sixteen unrelated Plaintiffs have joined twenty-five unrelated Defendants who independently copied different songs owned by different Plaintiffs. Plaintiffs have failed to show the infringing activity arises from the same transaction or occurrence or series of transactions and occurrences. The only similarity is that Defendants apparently used the Fast Track network to make the songs available.

In *Tele-Media Co. of Western Connecticut v. Antidormi*, the district court found plaintiff cable service provider's single action against 104 defendants for violation of a pirating statute did not meet the same transaction requirement of Rule 20. 179 F.R.D. 75, 76 (D. Conn. 1998). As in the present case, the court ordered the plaintiff to show cause why joinder was permissible. *See id.* The plaintiff

argued the joint discovery of the alleged violations through the countermeasure satisfied the same transaction requirement of Rule 20. *Id.* The court found that the plaintiff's right to relief arose out of the defendants' alleged use of the altered converters and not out of the countermeasure that revealed their alleged use. The *Tele-Media* case is similar to the present case in that the Plaintiffs here base the "relatedness" of the transactions on nothing more than Defendants' alleged violations of the Copyright Act, and not on any related or interdependent actions of the Defendants. The same transaction requirement requires joint action or liability on the part of the Defendants and is not satisfied by the fact that the Defendants accessed the songs through Fast Track, the largest peer-to-peer network, or the fact that Defendant are 25 of the 2.1 million subscribers who access the Internet through Bright House Networks. *See* Doc. No. 8 at 2, 11.

Courts have consistently severed claims against unrelated defendants where the only similarly between the defendants are the allegations that they violated the same statute or acted in the same manner. *See, e.g., DIRECTV v. Loussaert,* 218 F.R.D. 639, 643-644 (S.D. Iowa 2003) (ordering severance of allegations against unrelated defendants who had allegedly violated the same statute, but where the alleged violations of each defendant did not arise out of the same transaction or occurrence); *Turpeau v. Fidelity Financial Services, Inc.,* 936 F.Supp. 975, 978 (N.D. Ga.1996) (misjoinder where each plaintiff had a separate and unrelated claim against separate unrelated lenders and life insurance defendants who happened to have engaged in a similar practice of allegedly overcharging for credit life insurance).

Moreover, as in *Bridgeport,* even "if the counts in Plaintiffs' complaint arose from the same series of occurrences, the Court would exercise the discretion afforded it to order a severance to avoid causing unreasonable prejudice and expense to Defendants and to avoid a great inconvenience in the

administration of justice." *Id.* (citing 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1652 (3d ed. 2001) ("[T]he court has discretion to deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense or delay."). The court recognized in *Bridgeport* that it could not try all of the various plaintiffs' 477 counts together because, if joined in one action, defendants would be subjected to an overwhelming onslaught of materials and information unrelated to the specific claims against them – all of which they would be required to pay their attorneys to review. *Id.* Thus, failure to sever the claims against the Defendants would unduly hinder and burden the Defendants. *See id.*

Severance is also necessary to avoid a great inconvenience to the Court. As another court has recognized, a single misjoined action may serve the interests of all the parties in reducing the plaintiff's fees and costs; however, it imposes a significant burden on the Clerk's office who, each time an order was docketed in the case, would be obliged to prepare and mail a copy of the order to every defendant. *Tele-Media Co. of Western Connecticut v. Antidormi*, 179 F.R.D. 75, 76 (D. Conn. 1998) (finding the advantages of a single action can also be achieved through consolidation for pre-trial purposes). In *Bridgeport*, the court severed the case with 477 claims in part finding it to be unmanageable because its "courtroom would seat only a small fraction of defendants and their attorneys, it [could] not even hold a hearing on the motions currently pending; it [could] not host a management conference; [and] it certainly [could] not try all– or even most – of the Plaintiffs' counts together." 202 F.R.D. 229 at 232-33.

Thereon, it is **RECOMMENDED** that all claims except those by the first Plaintiff (Interscope

Records) against the first Defendant (Doe 1[6]) be **SEVERED**. It is further **RECOMMENDED** that

the other Plaintiffs and clams against other Defendants be **DISMISSED unless within 11 days** of any

Order adopting this Recommendation the Plaintiffs initiate separate new actions. It is further

**RECOMMENDED** that Plaintiff Interscope Records be allowed to renew its motion for

individualized pre-service discovery, although Plaintiff has not shown how identification of the

subscriber will directly indicate the identity of the intended Defendant who allegedly disseminated the

copyrighted recordings.

Failure to file written objections to the proposed findings and recommendations contained in

this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking

the factual findings on appeal.

Recommended in Orlando, Florida this _1st_ day of April, 2004.

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy

---

[6] Doe 1 is identified by the IP address: 24.73.44.203 2003-11-07 14:16:38 (EST). Doc. No. 1, Ex. A.

F I L E   C O P Y

Date Printed: 04/01/2004


Notice sent to:

      ___   Karen L. Stetson, Esq.
           Broad & Cassel
           Miami Center, Suite 3000
           201 S. Biscayne Blvd.
           Miami, FL  33131

           6:04-cv-00197    rdo

      ___   Randall C. Marshall, Esq.
           American Civil Liberties Union
           Foundation of Florida, Inc.
           4500 Biscayne Blvd., Suite 340
           Miami, FL  33137

           6:04-cv-00197    rdo

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

ORIGINAL

DOCKETED ON CM

AUG - 6 2007

009

BY

CASE NO.: <u>CV 07-2434 SJO (JCx)</u>          DATE: <u>August 2, 2007</u>

TITLE:    <u>Sony BMG Music Entertainment et al. v. Does 1 through 5</u>

========================================================================

**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                          Not Present
Courtroom Clerk                           Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**       **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                               Not Present

========================================================================

**PROCEEDINGS (in chambers):**
ORDER DISMISSING DEFENDANTS DOES 2 THROUGH 5; ORDERING PLAINTIFFS TO
SHOW CAUSE; AND GRANTING PLAINTIFFS' EX PARTE APPLICATION FOR LEAVE TO
TAKE IMMEDIATE DISCOVERY [Docket No. 5]

   The Court is in receipt of Plaintiffs' Ex Parte Application for Leave to Take Immediate
Discovery (the "EPA"). Plaintiffs, twelve record companies who own copyrights in sound
recordings, seek this Court's permission to serve limited, expedited discovery on a third-party
Internet Service Provider ("ISP"), the University of Southern California ("USC").

I.    BACKGROUND

   Plaintiffs allege that Defendants Does 1 through 5 (collectively, "Defendants") are infringing
Plaintiffs' copyrights by anonymously distributing copyrighted sound recordings to the public
through online file-sharing programs. (Compl. ¶ 21.) Because these programs allow users to act
anonymously, Plaintiffs are only able to identify Defendants by their Internet Protocol ("IP")
addresses and request permission to subpoena the identity of the persons using them. (EPA 2.)

II.   DISCUSSION

   A.    Plaintiffs' Complaint Improperly Joins Unrelated Defendants.

   A plaintiff may join multiple defendants only when the plaintiff's claims against those
defendants (1) arise "out of the same transaction, occurrence, or series of transactions or
occurrences" and (2) address a question of law or fact common to all defendants. Fed. R. Civ. P.
20(a). In this case, Plaintiffs' allegations of fact regarding Defendants' relationship is simply this:
"[E]ach Defendant is alleged to have committed violations of the same law . . . by committing the
same acts . . . and by using the same means . . . that each Defendant accessed via the same
ISP." (Compl. ¶ 17.) There are no factually specific allegations that Defendants acted in concert
in conducting the offending actions or that the infringing actions themselves are related in any
manner.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

SCANNED

**CASE NO.:** <u>CV 07-2434 SJO (JCx)</u>      **DATE:** <u>August 2, 2007</u>

In a series of cases in which some of the very same plaintiffs from this case were naming unrelated parties in order to economize on filing fees, two federal judges in the Western District of Texas rejected the plaintiffs' assertion that defendants who violate the same law in the same way are properly joined. *See, e.g., Elektra Entm't Group, Inc. v. Does 1 through 11*, No. A-04-CA-703 (W.D. Tex. Nov. 17, 2004). This defect in joinder is not cured by one additional allegation that Defendants accessed the file-sharing programs using the same ISP. *See Interscope Records v. Does 1 through 25*, No. 6:06-CV-197 (M.D. Fla. Apr. 1, 2004) (rejecting joinder based on theory that defendants used the same ISP).

As in *Elektra*, the claims in this case against each Defendant Doe are individual, based on individual acts of each Defendant Doe, and, if proven, will result in unique damage claims. The claims against each Defendant Doe will require separate trials as they may involve "separate witnesses, different evidence, and different legal theories and defenses . . . ." *See also BMG Music v. Does 1 through 203*, Civ. Action No. 04-650, 2004 U.S. Dist. LEXIS 27779, at *2 (E.D. Pa. Mar. 5, 2004) (severing claims as improperly joined).

Because Plaintiffs have not sufficiently alleged that each defendant's infringing actions were part of the same "transaction, occurrence, or series of transactions or occurrences," this case is DISMISSED without prejudice with respect to Defendant Does 2, 3, 4, and 5.

B.    <u>Some Plaintiffs May Be Improperly Joined.</u>

Plaintiffs are properly joined "if they assert any right to relief . . . arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action." Fed. R. Civ. P. 20(a). The Complaint specifically alleges that Doe 1, at about 8:08p.m. PST on January 28, 2007, made available for distribution 1260 audio files, of which ten were allegedly distributed unlawfully. (Compl. Ex. A.) Plaintiffs identify the copyright owners of the ten distributed recordings: UMG Recordings; Warner Brothers Records; Interscope Records; Sony BMG Music Entertainment; LaFace Records; and BMG Music. The distribution of these recordings is properly considered a series of transactions under Rule 20(a). Because the distribution was from the same anonymous user at about the same time, it is likely that the claims from each copyright owner will have a common question of law or fact.

However, the Complaint makes no specific allegations as to how Doe 1 has violated the copyrights of the other six Plaintiffs: Atlantic Recording, Capitol Records, Elektra Entertainment Group, Artista Records, Priority Records, and Maverick Recording. Therefore, the Court ORDERS PLAINTIFFS TO SHOW CAUSE why these plaintiffs should not be dismissed as improperly joined. A declaration identifying how Doe 1 has allegedly infringed which specific copyrights owned by these six plaintiffs will be sufficient if filed on or before **August 15, 2007.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

## CIVIL MINUTES - GENERAL

**CASE NO.:** <u>CV 07-2434 SJO (JCx)</u>          **DATE:** <u>August 2, 2007</u>

C.    <u>Plaintiffs May Conduct Immediate Discovery to Identify Defendant Doe 1.</u>

The question now before the Court is whether Plaintiffs may take immediate discovery to determine the identity of Defendant Doe 1. This question is not as simple as the "good cause" analysis Plaintiffs request. The Court must also address what showing Plaintiffs must make in order to conduct discovery that implicates the First Amendment rights of Doe 1.

1.    <u>Plaintiffs Have Established "Good Cause."</u>

An order permitting expedited discovery may be issued for "good cause." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275-76 (N.D. Cal. 2002). Here, the present lawsuit cannot proceed without limited expedited discovery. Plaintiffs cannot serve Doe 1 with the Complaint and Summons without first identifying her. Plaintiffs have established "good cause."

2.    <u>The Court Must Also Balance Defendants' Privacy Interest With Plaintiffs' Interest in Obtaining Discovery.</u>

Although good cause normally is sufficient to allow for expedited discovery, it is not enough in a case involving the right to privacy under the First Amendment. *See, e.g., NAACP v. Alabama*, 357 U.S. 449 (1958) (considering First Amendment privacy in applying a higher standard for discovery); *Black Panther Party v. Smith*, 661 F.2d 1243 (D.C. Cir. 1981) (same). Federal Rule of Civil Procedure 26 expressly states that parties may not obtain discovery of matters that are privileged.

Plaintiffs' discovery request implicates a question of privilege. A court order, even when issued at the request of a private party in a civil lawsuit, constitutes state action and is subject to First Amendment limitations. *Doe v. 2themart.com*, 140 F. Supp. 2d 1088, 1091-92 (W.D. Wash. 2001); *see also N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 265 (1964). The First Amendment protects anonymous speech. *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 200 (1999). This protection extends to expressions made using the Internet. *Reno v. ACLU*, 521 U.S. 844, 870 (1997); *2themart.com*, 140 F. Supp. 2d at 1092 ("[T]he constitutional rights of Internet users, including the First Amendment right to speak anonymously, must be carefully safeguarded.").

Further, a person who shares files over the Internet, such as music files, is engaging in expression that is entitled to, at a minimum, "some level of First Amendment protection." *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 257 F. Supp. 2d 244, 260 (D.D.C.), *rev'd on other grounds*, 351 F.3d 1229 (D.C. Cir. 2003); *Sony Music Entm't Inc. v. Doe*, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004) (concluding that sharing music files is entitled to "limited" First Amendment protection).

UNITED STATES DISTRICT COURT
Case 2:07-cv-02434-SJO-JC Document 12 Filed 08/02/2008 Page 4 of 6
CENTRAL DISTRICT OF CALIFORNIA

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 07-2434 SJO (JCx)</u>        **DATE:** <u>August 2, 2007</u>

However, there is no First Amendment protection for copyright infringement. *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 368 (1985) (rejecting First Amendment challenge to copyright infringement action); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013-14 (9th Cir. 2001) (finding that sharing copyrighted music files constituted copyright infringement).

Thus, the Court must determine how victims of copyright infringement can unmask anonymous infringers without outing law-abiding users. Mere allegations of wrongdoing are insufficient to strip speakers of their anonymity. "People who have committed no wrong should be able to participate online without fear that someone who wishes to harass or embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to discover their identity." *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999).

Many state and federal courts have considered the interplay between a defendant's right to privacy and a plaintiff's right to pursue her claims. These courts have required the plaintiffs to satisfy varying heightened standards to minimize the instances in which the identities of law-abiding anonymous speakers are revealed. *See, e.g., 2themart.com*, 140 F. Supp. 2d 1088; *Seescandy.com*, 185 F.R.D. 573; *Doe v. Cahill*, 884 A.2d 451 (Del. 2005); *Dendrite Int'l Inc. v. Doe*, 775 A.2d 756 (N.J. Super. Ct. App. Div. 2001); *In re Subpoena Duces Tecum to Am. Online, Inc.*, 52 Va. Cir. 26 (2000), *rev'd on other grounds*, 261 Va. 350 (2001).

In *Sony Music Entertainment Inc. v. Doe*, a Southern District of New York court surveyed these prior decisions and identified five factors to consider in determining whether the First Amendment protected the defendants' identities from disclosure:
　　(1)　　a concrete showing of a prima facie claim of actionable harm;
　　(2)　　the specificity of the discovery request;
　　(3)　　the absence of alternative means to obtain the subpoenaed information;
　　(4)　　a central need for the subpoenaed information to advance the claim; and
　　(5)　　the Doe defendants' expectation of privacy.
326 F. Supp. 2d 556, 564-65 (S.D.N.Y. 2004).

　　　3.　　 The *Sony* Factors Weigh In Favor of Allowing Discovery.

Applying these five factors to Plaintiffs' case, the Court determines that the recording companies are entitled to expedited discovery. First, Plaintiffs have alleged a prima facie case of copyright infringement. In order to establish copyright infringement, Plaintiffs must prove two elements: (1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original. *Feist Pub'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Plaintiffs have attached to the Complaint a partial list of the sound recordings that Doe 1 has allegedly distributed *without authorization.* (Compl. Ex. A.) This list identifies the copyright registration number for each work and the Plaintiff that owns each copyright. *Id.* Further, Plaintiffs allege that Doe 1, "without the permission or consent of Plaintiffs, has continuously used, and continues to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

## CIVIL MINUTES - GENERAL

CASE NO.: <u>CV 07-2434 SJO (JCx)</u>          DATE: <u>August 2, 2007</u>

use, an online media distribution system to download [or] distribute to the public" the copyrighted recordings. *Id.* ¶ 21.

Second, Plaintiffs have requested specific discovery: Doe 1's name, current address and telephone number, permanent address and telephone number, e-mail address, and Media Access Control address. (EPA 2.) This request contrasts with the ambiguous discovery sought in *2themart.com.* 140 F. Supp. 2d at 1095-96 (denying "extremely broad" discovery request for "all identifying information and documents" concerning twenty-three anonymous Internet users).

Third, Plaintiffs have demonstrated that no alternative means of obtaining the requested information exist. By searching a publicly available database, Plaintiffs could only determine the ISP that administers the allegedly infringing IP addresses. (EPA 2-3; Linares Decl. ¶ 18.) Fourth, Plaintiffs have a central need for the information to proceed with their claim. Without the ability to identify Doe 1, Plaintiffs cannot serve process and pursue their case on the merits.

The fifth *Sony* factor is the only one that weighs against the Plaintiffs. Anonymous users have an expectation of privacy in their Internet speech. Still, this expectation of privacy is not enough to overcome the weight of the other four factors.

Plaintiffs' Ex Parte Application is GRANTED with respect to Defendant Doe 1.

D.     <u>Plaintiffs Must Comply With Additional Procedural Safeguards.</u>

This Court has already expressed its concern that in the thousands of peer-to-peer lawsuits filed by the record companies "potentially meritorious legal and factual defenses are not being litigated, and instead, the federal judiciary is being used as a hammer by [the record companies] to pound settlements out of unrepresented defendants." *Elektra Entm't Group, Inc. v. Brien*, No. CV 06-5289, at 2 (C.D. Cal. Mar. 2, 2007). Thus, procedural safeguards are necessary to provide Doe 1 with an opportunity to contest the disclosure of her identifying information.[1]

Plaintiffs must serve the requested Rule 45 subpoena upon USC as follows:
1.     Plaintiffs must include a copy of this order when they serve the subpoena.
2.     USC shall, upon receipt of the subpoena, immediately preserve the requested information about Doe 1.
3.     Within 7 days of receiving the subpoena, USC shall provide Doe 1 with notice of the subpoena and this order by both mail and e-mail.

---

[1] The American Bar Association (www.abanet.org) and the California Bar Association (www.calbar.org) provide guidance on how to find an attorney.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.:  CV 07-2434 SJO (JCx)          DATE: August 2, 2007

4.   Within 21 days from the date USC mails notice or e-mails notice to Doe 1 (whichever is earlier), Doe 1 may file a motion to quash the subpoena with this Court. If Doe 1 does not file a motion to quash, USC shall provide the subpoenaed information to Plaintiffs.

5.   Plaintiffs must use the information obtained through the subpoena solely for the purpose of protecting Plaintiffs' rights under the Copyright Act.

III.   RULING

Defendant Does 2, 3, 4, and 5 are DISMISSED without prejudice. Plaintiffs are ORDERED TO SHOW CAUSE, by declaration filed on or before **August 6, 2007**, why six of the plaintiffs should not be dismissed. Plaintiffs' Ex Parte Application for expedited discovery is GRANTED as to Defendant Doe 1 in accordance with the procedural safeguards outlines above.

IT IS SO ORDERED.